**SOUTH CENTRAL BELL TELEPHONE COMPANY, Plaintiff–Appellee,**

v.

**Kathryn B. CELAURO, Commissioner of Revenue for the State of Tennessee, Defendant–Appellant.**

Supreme Court of Tennessee, at Nashville.

July 18, 1988.

Raymond Whiteaker, W.W. Berry, Nashville, for plaintiff-appellee.

W.J. Michael Cody, Atty. Gen. and Reporter, Charles L. Lewis, Deputy Atty. Gen., H. Rowan Leathers, III, Asst. Atty. Gen., Nashville, for defendant-appellant.

## OPINION

HARBISON, Chief Justice.

This case involves the relationship and interplay between portions of the Tennessee excise tax statutes and provisions of the federal Internal Revenue Code. Two separate issues involving interpretations of the Tennessee statutes are presented.

The taxpayer filed for refund for corporate excise taxes allegedly overpaid by reason of disparate accounting for depreciation under the two tax systems. It also claimed that it had not been allowed sufficient credit for depreciation expense under a state statute which compensates for different treatment of tax credits under the federal and state systems.

Both issues were presented as purely abstract questions of law. No evidence was introduced on either issue, and there is no testimony illustrating or demonstrating in a concrete way the issues presented. Admissions contained in the answer filed by the Commissioner narrowed the issues to purely legal interpretation or construction of highly technical taxing provisions.

The Chancellor resolved both issues in favor of the taxpayer. After careful consideration, we affirm as to the first issue but reverse as to the second.

## A. The Depreciation Add–Back Issue

For more than ten years, the Tennessee corporate excise tax has been computed as a percentage of federal taxable income with several enumerated exceptions and adjustments. *See* T.C.A. § 67–4–805.

The statutes provide for a number of subtractions from federal taxable income, including the following:

A portion of the gain or loss of the sale or other disposition of property having a higher basis for Tennessee excise tax purposes than federal income tax purposes measured by the difference in the Tennessee basis and the federal basis; ... T.C.A. § 67–4–805(2)(D)

There probably are a number of different ways in which a particular asset could have a higher basis for Tennessee excise tax purposes than for federal income tax purposes. As pertinent here, one example of such a differential could arise when a corporation used for federal tax purposes the system of accelerated depreciation authorized by the Economic Recovery Tax Act of 1981 [1] while continuing to use slower methods of depreciation for state corporate excise tax purposes. Under T.C.A. § 67–4–805(1) the taxpayer was granted the option of continuing to use for state purposes methods of depreciation being utilized prior to the 1981 federal statute. When a taxpayer used this option and at the same time used the accelerated system under the federal statutes, a differential in the depreciated cost basis of an asset would obviously occur, the state basis under the slower method being higher because of the lower rate of depreciation.

For part of the tax years in question in the present case, however, T.C.A. § 67–4–805(2) afforded the taxpayer another option under which it could compute its Tennessee excise tax utilizing accelerated depreciation as under the federal statutes, but requiring that there be added back to net earnings "one-tenth ($\frac{1}{10}$) of all depreciation used in computing federal taxable income."

The taxpayer in the present case utilized this second option. It, therefore, used accelerated depreciation on all assets eligible therefor in computing taxable income for both state and federal purposes. The taxpayer insists, however, that the add-back of 10 percent of depreciation required under this option created a differential of 10 percent between the basis of its assets for federal purposes and their basis for state excise tax purposes. In other words, the taxpayer insists that its effective depreciation for Tennessee tax purposes was only 90 percent of that allowed in computing federal taxable income.

The statute requiring the addition of $\frac{1}{10}$ of all depreciation used makes no reference to any adjustment to basis for purposes of depreciation. It is the insistence of the Commissioner of Revenue, therefore, that the effect of the statute is simply to require the add-back for purposes of computing net earnings for Tennessee excise tax purposes; and that there was, in fact, no differential in the depreciated basis of assets which were sold by the taxpayer in 1984.

■ Of course, whether there were a differential in the depreciation basis ordinarily would be a question of fact, not of law. As stated, however, there is no testimony in the record with respect to any particular asset or group of assets or as to the details of the depreciation or accounting used by the taxpayer. As framed by the parties, the issue is whether the 10 percent of depreciation expense added back to income should also be added back to the depreciated basis of assets otherwise arrived at by the methods of depreciation accounting which were used.

The taxpayer contends, and the Chancellor found, that the natural and ordinary meaning of the statutory provision is that the taxpayer effectively lost 10 percent of its otherwise allowable depreciation expense by having to add back 10 percent "of all depreciation used in computing federal taxable income." The statute could have been more clearly written, and an express provision could have been included to clari-

---

1. Pub.L. No. 97–34, 95 Stat. 172 (1981).

fy whether this 10 percent should also have been added back to the depreciation basis otherwise calculated.

It is our opinion that the contention of the taxpayer is the more logical and natural construction of the statute. The addback provision clearly was designed to provide some compensation to the state for loss of revenue which would otherwise have resulted from the accelerated depreciation system allowed under the federal statutes. It would seem illogical to hold, then, that the provision designed to provide more current revenue to the state at the same time requires the taxpayer to absorb that 10 percent upon disposition of an asset.

■ It seems to us that when the taxpayer did utilize the second option under T.C.A. § 67–4–805 and was required to add back to its taxable income 10 percent of all depreciation used in computing that income, the taxpayer was not required to charge that 10 percent as depreciation for general accounting purposes. Effectively for state purposes the taxpayer only received 90 percent of the depreciation expense which it otherwise would have been entitled to claim, so that a differential in basis did, in fact, occur as a result of the utilization of this option.

The judgment of the Chancellor with respect to this issue is affirmed.

### B. The Tax Credit Issue

During two of the tax years involved in the present case, the taxpayer acquired capital assets for which it was allowed an investment tax credit against its federal taxes under § 48(q) of the Internal Revenue Code. This investment tax credit was a direct dollar-for-dollar credit against the cost price of the capital asset. Again, there are no concrete examples in the record; but as we understand it, if the taxpayer paid $10,000.00 for a capital asset, it ordinarily would have been allowed $1,000.00 in credit against its federal income taxes.

As a corollary to the acquisition of such a capital asset and the use of the investment tax credit, however, § 48(q) of the Internal Revenue Code requires that the federal basis of such an asset for purposes of depreciation be reduced by 50 percent of the amount of the credit. Under the example given previously, therefore, for purposes of depreciation the $10,000.00 asset would have a depreciation basis of $9,500.00. The taxpayer, however, recouped $1,000.00 from the actual cost of the asset by reason of the investment tax credit, so that, in one sense, it is allowed depreciation on a basis greater than net out-of-pocket cost.

The Tennessee excise tax statutes do not contain a corollary provision to § 48(q) permitting an investment tax credit. State tax regulations do, however, provide that if a taxpayer is required to reduce the basis of an asset under the federal statutes, a similar reduction must be made for purposes of depreciation accounting under the state statutes.[2]

As subtractions from federal taxable income, T.C.A. § 67–4–805(2) lists several items. Among these is the following:

> (H) Any expense, other than income taxes, not deducted in determining federal taxable income for which a credit against the federal income tax is allowable. This subdivision shall apply to taxable periods ending on and after December 31, 1977;
> . . .

The taxpayer places great emphasis upon the first two words of this provision—"*any* expense." The Commissioner points out that these words are qualified by the language "for which a credit against the federal income tax is allowable."

The taxpayer insists that it was required to reduce its depreciation base when it utilized the federal investment tax credit. Since it received no similar credit under state statutes, it insists that subsection H quoted above permits it to compensate for "lost" depreciation expense by deducting the same from its taxable income for state excise purposes.

2. Tenn.Admin.Comp. 1320–6–1–.19(2).

The Commissioner, on the other hand, insists that no credit against federal income tax is allowed for depreciation expense. The expense is deductible in computing federal taxable income, but it is not a direct credit against the federal income tax as are certain other expenses specifically recognized in the Internal Revenue Code. A classic example is the federal jobs credit provision of § 51 of the Internal Revenue Code. This credit encourages new jobs by allowing the salaries of certain employees to be taken as a direct credit against the federal income tax. Such salaries, however, cannot also be deducted as an expense for federal purposes. For example, a corporation with a payroll of $100,000.00, of which $5,000.00 qualifies for the new jobs credit, could only deduct salary expense of $95,000.00 for federal tax purposes. It would take the $5,000.00 as a direct credit against its tax liability.

Tennessee does not have a jobs credit provision similar to that in the federal system. Accordingly the provisions of subsection H above quoted would permit the taxpayer the benefit of its full $100,000.00 salary expenses, even though only $95,000.00 were allowed for federal tax purposes.

It was this particular jobs credit provision which was specifically discussed at length in the legislative debates when subsection H was enacted as Tennessee Public Acts 1978, Chapter 841.

The compensating provision is not limited by its terms to the federal jobs credit program. It is limited, however, to expenses ordinarily deductible where the deduction is not allowed because there has been a direct credit for that expense against the federal income tax. Depreciation expense, as previously stated, is not a direct credit against the federal income tax. Therefore, in our opinion, the compensating provision does not permit the taxpayer the deduction claimed in the present case. In one sense it may have "lost" some depreciation expense, but the statute does not compensate for all lost expenses—only those for which a direct federal tax credit is permitted. The loss of depreciation expense in the present case is, indeed, a by-product of the tax investment credit allowed for the cost of purchasing a capital asset, but the depreciation expense itself does not literally fall within the terms of the adjustment provisions quoted above.

The judgment of the Chancellor as to this issue is reversed.

Costs of the appeal will be taxed equally to the parties. Costs in the trial court will be fixed by the Chancellor. The cause is remanded to that court for any further proceedings which may be necessary, including any questions regarding fees or interest under T.C.A. § 67–1–1803(d).

FONES, DROWOTA and O'BRIEN, JJ., and TODD, Special Judge, concur.