PHILLIPS & BUTTORFF MFG. CO. *v.* CARSON.

(*Nashville,* December Term, 1948.)

Opinion filed January 17, 1949.

134

Charles L. Cornelius, W. Ovid Collins, Jr. and C. W. Tuley, all of Nashville, for appellant.

Roy H. Beeler, Attorney General, William F. Barry, Solicitor General, and Allison B. Humphreys, Jr., Assistant Attorney General, for appellee.

Mr. Chief Justice Neil delivered the opinion of the Court.

This appeal presents the question of the proper construction of Section 2(c) 2 of Chapter 3 of the Public Acts of 1947, known as the Retailer's Sales Tax, and the validity of "Rule 40", which was promulgated by the Commissioner of Finance and Taxation and which purports to interpret the section above referred to.

We will refer to the parties as they appeared in the Chancery Court.

The complainant filed its original bill to recover certain taxes which it paid under protest upon materials claimed to be exempt under Section 2 (c) 2 of the Retail Sales Tax. Complainant is a wholesaler and engaged in manufacturing articles to be sold at retail, and in the course of its business buys materials to be used in its manufacturing processes. The bill sets out in detail the various articles, materials and substances upon which it was required to pay the sales tax and alleges that each and every such article and material is "vital and indispensable to complainant's manufacturing process." It is alleged that because they do not meet the requirements of the defendant Commissioner's ruling (with two possible exceptions) the complainant is required to pay the tax thereon.

The section of the Act, Sec. 2 (c) 2, under which the tax is collected provides:

"Sec. 2(c) 2. The terms 'sale at retail' 'use', 'storage' and 'consumption' shall not include the sale, use, storage or consumption of industrial materials for future processing, manufacture or conversion into articles of tangible personal property for resale where such industrial materials become a component part of the finished product or are used directly in fabricating, converting, or processing such materials or parts thereof, nor shall such terms include materials, containers, labels, sacks or bags used for packaging tangible personal property for shipment or sale."

The Rule of the Commissioner, which is assailed by complainant as being unlawful and unauthorized is as follows:

"Rule 40:

"Industrial materials for future processing, manufacturing or converting into articles of tangible personal

property for resale, where such industrial materials become a component part of the finished product or are used directly in fabricating, converting or processing are not included in the Sales Tax Act.

"The following are examples of industrial materials not taxable under this provision:

"All raw materials which become a recognizable integral part of such finished articles; also such materials that are used directly in the processing, converting and fabricating tangible personal property such as solvents, refrigerants, purifying chemicals, oxidizing chemicals, catalysts and other chemicals used; also filter cloths, filter papers and other filtering materials.

"The following are examples of materials that are taxable under this provision:

"Fuel, either coal, coke, oil or other fuel, used for producing power, heat, steam, gas or electric energy for use in the processing, manufacturing, fabricating or converting of industrial materials into furnished products, unless such fuels become an identifiable part of the finished product; also oil, grease, waste and maintaining materials used in connection with the operation of tools, machines, machinery or equipment which are used in processing, manufacturing, fabricating or converting as aforesaid".

The bill alleges that by the language of Sec. 2 (c) 2 "the legislature expressed the clear intention to exclude from the application of the Sales Tax the 'use', 'storage', and 'consumption' of all raw materials which are processed, manufactured into articles of tangible personal property for resale, and also all industrial materials employed directly in the fabrication, conversion or processing of such raw materials." It is further alleged that it was intended to exclude from the tax two classes of tan-

gible personal property, to-wit, (1) raw materials which are used in manufacturing and "become a component part of the finished product" and (2) "other industrial materials which do not become a component part of the finished product but which are *used directly* in the method or process of manufacture or conversion." The several items, or classes of materials which are involved, and which the Commissioner has ruled as subject to the tax, as well as those exempt, appear in "Rule 40", as copied in this opinion.

It is the contention of the complainant that the Commissioner, while he is authorized to make rules for the enforcement of the Sales Tax Act, has adopted a rule (Rule 40) which is so narrow that it is a burden upon the economic life of the complainant and other manufacturers in Tennessee, and is therefore illegal. The bill prayed for a Declaratory Judgment as to the proper construction to be placed upon the aforesaid Section of the Statute.

The Commissioner answered the bill, and, after admitting certain allegations which are not important to this present controversy, charged that his action in collecting the tax was not illegal and that Rule 40 is in conformity with the legislative intent. The answer denied that the exemption in Section 2 (c) 2 was subject to the "broad interpretation" given it by the bill and denied that it was ever the intention of the legislature to create an exemption which would exempt all industrial materials entering into or essentially vital and indispensable to the manufactured product. There was filed as an exhibit to the answer copies of the Senate and House Journals which disclosed, as defendant insists, the action of the legislature upon certain amendments to the Sales Tax Act, and which clearly indicated that it was not the

intention to make the exemptions claimed in the original bill. The defendant denied the right of the complainant to have a Declaratory Judgment declaring the meaning and effect of Sec. 2 (c) 2 of the Sales Tax Statute.

The cause was heard on stipulation and the Chancellor sustained the bill in part and from this decree both the complainant and the defendant appealed.

Before giving consideration to the assignments of error it is proper to observe that the Commissioner in the lower court conceded that some of the materials upon which the tax had been collected were exempt. We deem it unnecessary to make any further reference to these items, or the reasons for adjudging them to be exempt other than to agree with the conclusion reached.

The Commissioner's assignments of error are as follows:

(1) "The Chancellor erred in finding and decreeing that coal and fuel oil which are used to generate steam, which is then used to operate machines which are used in the manufacture of tangible personal property for resale, are exempted from taxation under Chap. 3 of the Public Acts of 1947 by the operation of Section 2 (c) 2 of said Chap. 3. The Chancellor should have held that coal and fuel oil when so used are not exempt from taxation under said Chap. 3 by the operation of Section 2 (c) 2 of said Chap. 3 (Assignment of Error No. 1)."

(2) "The Chancellor erred in finding and decreeing that coal and fuel oil which are used to maintain enameling solutions at uniform temperatures are exempt from taxation under Chap. 3 of the Public Acts of 1947 by the operation of Section 2 (c) 2 of said Chap. 3; and in decreeing a recovery in favor of Appellee in the amount of $11.98, the amount of sales tax paid under protest on these items of tangible personal property. The Chan-

cellor should have found and decreed that coal and fuel oil when so used are not exempted from taxation under said Chap. 3 by the operation of said Section 2(c) 2 (Assignment of Error No. II).''

The complainant's single assignment is as follows:

''The Chancellor erred in finding and decreeing that fire brick and clay used to line furnaces in which iron ore is melted, and clay to line the ladles which are used to transfer the molten metal from the iron furnaces to the molds, and all of which are gradually consumed in the manufacturing process, are subject to the tax levied by Chapter 3 of the Public Acts of 1947.''

■ ■ We have given careful consideration to the learned Chancellor's opinion, as well as the able and exhaustive argument of counsel in support of his finding. It was the view of the Chancellor, and also of complainant's counsel, that the Commissioner had erred in his misinterpretation of the tax statute, Sec. 2 (c) 2; that ''Rule 40'' was narrow and was in clear violation of the intention of the legislature in that it imposed burdens upon manufacturers to their great disadvantage, and differed from the tax burden borne by agriculturists and other classes. We think the basic error of the Chancellor's finding appears in giving the statute a liberal construction in favor of the taxpayer instead of a strict construction against him. It is a uniform rule of construction of tax statutes, from which we have not departed, that exemptions in tax statutes are strictly construed against the taxpayer. *Sealed Power Corporation* v. *Stokes,* 174 Tenn. 493, 127 S. W. (2d) 114; *Nashville Tobacco Works* v. *City of Nashville,* 149 Tenn. 551, 260 S. W. 449; *Knoxville and Ohio R. Co.* v. *Harris,* 99 Tenn. 684, 43 S. W. 115, 53 L. R. A. 921. In *Galloway* v. *City of Memphis,* 116 Tenn. 736, 750, 94 S. W. 75, 78, it was

held that in construing the Acts giving exemptions, "all doubts must be resolved in favor of the state and against the exemptions". This rule of interpretation has not been disapproved by any legislative direction and it must be followed until the legislature, whose duty it is to provide revenue for support of the government, directs that a more liberal interpretation in favor of the taxpayer be followed.

Counsel for the complainant and the Commissioner both argue at some length as to whether or not the Act manifests an intention to favor manufacturers over other classes, and especially the farmer, dairyman, cattleman, etc. It is argued that, as a result of the Commissioner's ruling, the former must pay a sales tax twice while the latter is given an exemption. We find no discrimination, considering that the argument is pertinent to the issue before us. The manufacturer pays the tax upon coal and fuel oil to operate his plant, while the farmer and dairyman pay the tax upon feed for producing and processing meat products and dairy products for sale to the consumer. But we decline to give further consideration to this issue because, (1) it is not involved in the present controversy, and (2) it is not the province of this Court to formulate a general rule of construction to evenly balance the economic burdens and benefits of different classes of taxpayers. We doubt if this would even be possible for no matter what rule might be formulated some taxpayers would complain that "the Court gave me the worst of it." This is only natural because no one ever experiences any great elevation of soul in paying taxes to support the government.

■ The question before us is whether or not the purchase of coal and fuel oil for use by complainant in the generation of steam with which to operate power gen-

erators is taxable under Chap. 3 of the Acts of 1947. Such materials are taxable unless they are exempt by reason of Sec. 2 (c) 2 of the Act. This section exempts two classes of materials (1) "Sale at retail", "use, storage or consumption of industrial materials for future processing, manufacture or conversion into articles of tangible personal property for resale *where such industrial materials become a component part of the finished product*", and (2) "where such industrial materials . . . *are used directly* in fabricating, converting, or processing such materials or parts thereof". (Emphasis ours.) Now the materials here in question, coal and fuel oil, do not become a component part of anything that is manufactured by the complainant, and are therefore not exempt from the tax.

The crux of the case appears in the positive and divergent contention of the Commissioner and the defendant, the former insisting that coal and fuel oil must be used "directly" in the manufacture of a finished product, and that it must also be denominated as "industrial material", for it to be exempt. Counsel for the complainant insists that we should not give the word "directly" a "dictionary" meaning. In other words we should give it a much broader interpretation as a descriptive term in accordance with the intention of the legislature. We have no right to asume that the word was used otherwise than in its ordinary sense. It has been held by this court in many cases that "words employed by the legislature are to be taken in their natural and ordinary sense." *O'Neil* v. *State,* 115 Tenn. 427, 90 S. W. 627, 3 L.R.A., N. S. 762; *Hedges* v. *Shipp,* 166 Tenn. 451, 62 S. W. (2d) 49; *Tobin* v. *Estes,* 168 Tenn. 403, 79 S. W. (2d) 550; and other cases. As commonly understood it means "in direct contact with and without the intervention of

any person or thing.'' Of course, this is the dictionary meaning. Webster's New International Dictionary, 2d Ed. But we are not authorized to give it a different meaning to meet the exigencies of any unusual situation. In *O'Neil* v. *State, supra,* it was said [115 Tenn. 427, 90 S. W. 630], ''Where a word has both a popular and technical meaning, the court will give it effect according to the popular signification.'' The words of a statute must be taken in their ordinary sense *''and without any force or subtle construction to extend their meaning.''* (Emphasis ours.) *State ex rel.* v. *Clarksville & R. Turnpike Co.,* 34 Tenn. 88, 90.

We think that coal and fuel oil, purchased for use by the complainant in operating generators and other machinery, are used indirectly in that they produce steam, which gives power to generators and which in turn set in motion machines of different kinds in fabricating articles to be sold to the ultimate consumer. The learned chancellor held that ''fuel consumed in the generation of power with which to fabricate materials being exerted directly in the manufacturing process is 'used directly' although it may be conveyed through the medium of different types of machinery,'' etc., and that to hold otherwise ''would give the statute a strained construction,'' contrary to legislative intent.

We think the legislature expressed an intent that is in accord with our construction of the Statute, and contrary to that of the chancellor, when the Senate refused to adopt the following amendment to the ''Sales Tax'' Statute. It reads as follows:

''The 'use tax' levied by this section however, shall not apply to the importation and use in this state of machinery, tools, equipment and other tangible personal property used in the process of manufacturing, *nor to*

*any supplies incidental to the process of such manufacturing which do not enter into nor form a part of the finished product of such manufacturing.''* (Emphasis ours.)

It thus appears that the legislature refused to broaden the exemption to the extent contended for by the complainant. There is no disagreement that we must construe the statute in accordance with the legislative intent. But when words are used in a statute defining the limits of an exemption, we cannot, under the guise of interpretation, enlarge the scope of the exemption. On the contrary ''all doubts must be resolved in favor of the State and against the exemptions.''

The rule of construction, which the Chancellor followed, is contrary to our holding in cases cited in this opinion, that exemption statutes are strictly construed against the taxpayer. In support of his construction of Sec. 2 (c) 2 he quoted the following from 51 Am.Jur. p. 531:

''Language relating to exemption of property from taxation should be given a fair and reasonable interpretation neither too broad nor too narrow in order to ascertain the true intent as to its scope''.

This is doubtless a sound rule of construction in some jurisdictions but it is in conflict with the law of Tennessee.

The authorities we have cited in support of the Commissioner's first assignment of error, and the reasons therefor, are equally applicable to the second assignment. We think they also apply to the complainant's assignment of error. This assignment complains that fire brick bought for use to line furnaces, and clay to line ladles which are used to transfer molten metal from iron furnaces to molds are exempt from the tax and the chancellor should have so decreed; that it was in error for

him to hold that such materials "are not exempt" under Sec. 2 (c) 2 of Chapter 3 of the Sales Tax Act.

It can hardly be doubted but that these materials are a part of the machinery equipment. Machinery, tools, maintenance materials and building materials are not exempt because they do not become a part of the article being made for resale.

If we should construe the statute as contended for by the complainant it would not only be contrary to the language of the Act, and violative of legislative intent, but would tend to limit the taxing power of the State. In other words the result would be to amend a tax statute under the guise of judicial interpretation. If there are any inequalities or injustices in the statute, the duty of correcting them devolves upon the legislature and not the Court.

We cannot properly consider the bill as one for a Declaratory Judgment, and undertake to announce a rule for construing and otherwise interpreting Sec. 2 (c) 2 of the Act, as well as other provisions of the Act. This is true for the reason that we have no authority to make rules for the future guidance of the Commissioner of Finance and Taxation. We are content to hold that "Rule 40" is not invalid and is sufficient in the proper enforcement of the statute.

The complainant's assignment is overruled and the Commissioner's assignments are sustained, with the result that the decree of the Chancellor is reversed and the bill dismissed.

All concur.