**L. T. BURNETT et al., Appellees,**

v.

**Thomas D. BENSON, Commissioner, Department of Revenue, State of Tennessee, Appellant.**

Supreme Court of Tennessee.

July 24, 1972.

David M. Pack, Atty. Gen., Milton P. Rice, Deputy Atty. Gen., Nashville, for appellant.

John F. Dugger, Morristown, for appellees.

OPINION

PER CURIAM.

The record in the instant case involves a suit instituted by L. T. Burnett and others in the Chancery Court of Davidson County, Part II, against Thomas D. Benson, Commissioner of Revenue, to recover certain monies paid in satisfaction of a sales tax obligation assessed by the Commissioner. The payment was made under protest, and the present suit instituted to recover the same pursuant to T.C.A. § 67–2303 et seq.

In the course of this opinion the parties will be designated as they appeared in the trial court; that is, L. T. Burnett, L. E. Burnett, R. G. Burnett, and J. W. Burnett, as complainants, and Thomas D. Benson, Commissioner, Department of Revenue, State of Tennessee, as defendant.

Complainants seek to recover $10,190.77 which sum represents sales tax, penalty, and interest alleged to have been collected "illegally and unjustly" from complainants by defendant. Complainants aver that they were required to pay the sales tax for purchases from 1965 to 1967 of calcium carbonate, drugs, vitamins, and acids which were mixed with grains to produce poultry feed and that the feed so produced by complainants was used to feed broiler chickens owned by complainants. In the original bill complainants set forth two alternative theories to avoid taxation, which are: (1) that the "ingredients, when added and mixed with grains and concentrates, lost their original identities, and became a part of the poultry feed, and thus was exempt from taxation, under the provisions of Section 67–3012, T.C.A." and (2) that the purchases of the ingredients are exempt from taxation under T.C.A. § 67–3002(c), par. 2. Complainants' second theory is bottomed on the premise that since they are engaged in the business of processing poultry for sale to wholesalers and retailers, they should be considered as a processor of tan-

gible personal property for resale. Therefore, complainants allege that ingredients constitute industrial materials which are consumed in the course of processing the poultry.

In his answer defendant denies that the calcium carbonate, drugs, vitamins and acids are poultry feed as that term is used in T.C.A. § 67–3012. Defendant further denies that complainants are entitled to a tax exemption under the provisions of T.C.A. § 67–3002(c), par. 2 for the reason that the production of poultry feed and the subsequent consumption of this feed by chicks is not the "sale, use, storage or consumption of industrial materials for further processing, manufacture or conversion into articles of tangible personal property for resale where such industrial materials become a component part of the finished product" but it is "simply a 'growing' of chicks."

The salient facts may be summarized as follows:

Complainants are engaged in an integrated poultry operation with various partnerhips used only for bookkeeping purposes and cost analysis. Complainants are partners doing business as Burnett Produce Company, Cosby Broilers, and City Milling Company.

Cosby Broilers operates a hatchery in Cosby, Tennessee. Cosby Broilers maintains flocks of breeder hens from which baby chicks are produced. Burnett Produce Company purchases all of the chicks from Cosby Broilers. The chicks are then placed in growers' houses until they reach broiler size. The growers are paid to feed and care for the chicks. However, the chicks are owned at all times by complainants, and they provide all feed and medication for the birds.

Burnett Produce Company keeps approximately two million chickens in the field at all times. The length of time required to produce a broiler is approximately eight and one-half weeks. After the growth period the broilers are taken to Burnett Produce Company's plant in Morristown, Tennessee, where the birds are killed, dressed, chilled, iced, packed and shipped to wholesalers and retailers for resale.

The feed which was fed to the broilers while at the growers' houses was produced by the partners in Newport, Tennessee, at City Milling Company. The record discloses that City Milling Company purchased feed concentrate, grains, vitamins, drugs, calcium carbonate and acids for the poultry feed. These items were mixed together to produce the feed. The calcuim carbonate, vitamins, drugs, and acids were added to the grains and feed concentrate in order to prevent disease and stimulate feed conversion and growth.

Complainants did not pay any sales or use tax on the aforementioned additives during the years 1965–1967. As a result the Department of Revenue made a deficiency assessment against complainants in the amount of $10,190.77. This sum was paid to the Department of Revenue under protest on April 11, 1969.

The Chancellor rejected complainants theory that the purchases of the ingredients were exempt under T.C.A. § 67–3002(c), par. 2. However, the trial court was of the opinion that the calcium carbonate, drugs, vitamins, and acids constituted poultry feed and were exempt from taxation pursuant to T.C.A. § 67–3012, which provides in part as follows:

"The sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state of the following tangible personal property is specifically exempted from the tax imposed by this chapter: . . . livestock and poultry feeds . . . "

From the adverse judgment of the court below defendant has seasonably perfected an appeal to this Court. The sole issue presented in the case at bar is whether or not calcium carbonate, drugs, vitamins, and acids are poultry feed within the meaning

and purview of T.C.A. § 67–3012 during the years 1965–1967 inclusive.

At this juncture it is necessary to point out that by Chapter 95 of the Public Acts of 1969 the General Assembly has defined poultry feed to include "all grains, minerals, salts, proteins, fats, fibers and all vitamins, acids and drugs used and mixed with said ingredients as a growth stimulant, disease preventive, to stimulate feed conversion and make a complete feed." Since poultry feed was not legislatively defined when the deficiency assessment was made in the instant case, we are required to give the term natural and ordinary meaning in order to effectuate the intent of the legislature. Phillips & Buttorff Mfg. Co. v. Carson (1949) 188 Tenn. 132, 217 S.W.2d 1.

While the parties argue at great length in their briefs whether or not the calcium carbonate, vitamins, drugs, and acids are poultry feed, the real controversy centers around a dispute over what criterion is used to determine whether or not the ingredients are poultry feed. It is the position of complainants that the ingredients are categorized as poultry feed at the time of their purchase by the intended use of the ingredients after sale. Thus complainants assert that since the additives were purchased for the purpose of feeding poultry, the ingredients are poultry feed and exempt from taxation.

On the other hand defendant insists that the potential use of the property purchased is immaterial. It is the contention of the Commissioner that the applicability of the exemption statute is determined by the nature of the property at the time of sale. Thus defendant urges that the ingredients at the time of sale were merely calcium carbonate, drugs, vitamins and acids and were not entitled to the tax exemption.

We are of the opinion that defendant's argument is not sound. As was stated above complainants also purchased grains to feed to their poultry. Applying defendant's theory to the purchase of grains it could as easily be argued that grains purchased for the express purpose of feeding poultry is not poultry feed, but is simply grain. It can hardly be doubted that to embrace defendant's position would thwart the intent of our Legislature.

In the case at bar the ingredients were purchased in order to feed poultry and they were in fact so used. It is our view that purchase of the additives for use as poultry feed entitled complainants to the tax exemption under T.C.A. § 67–3012.

It results that defendant's assignment of error is overruled and the decree of the trial court is affirmed. Costs of this appeal are taxed to defendant.