**AFG INDUSTRIES, INC.,**
Plaintiff/Appellant,

v.

**Charles E. CARDWELL, Commissioner of Revenue, State of Tennessee,**
Defendant/Appellee.

Supreme Court of Tennessee,
at Knoxville.

June 8, 1992.

**584**

Mark S. Dessauer, Hunter, Smith & Davis, Kingsport, for plaintiff/appellant.

Charles W. Burson, Atty. Gen. & Reporter and William P. Sizer, Asst. Atty. Gen., Nashville, for defendant/appellee.

## OPINION

JOSEPH M. TIPTON, Special Justice.

The plaintiff, AFG Industries, Inc., brought suit against the Tennessee Commissioner of Revenue to recover over sixty-five thousand dollars in sales and use taxes assessed for 1984 through 1987 which it had paid under protest. AFG, which makes flat glass and related products for resale, claims (1) that the molten tin used in its manufacturing process is tax exempt under T.C.A. § 67–6–206(a) as industrial machinery and (2) that certain electricity used to heat heating elements is exempt under T.C.A. § 67–6–206(b)(3) because it, as heat, came into direct contact with the glass being made. The chancellor ruled against AFG on both exemptions.

AFG manufactures flat glass at its Greenland, Tennessee, facility. The materials used to make the glass are melted and combined in a furnace to form molten glass. At this point, AFG uses a float process by which the molten glass is shaped while it floats on molten tin. Other cooling and cutting processes occur later to make the finished product.

The portion of the manufacturing process involved in this case is the tin bath. It consists of support steel, upper and lower steel casings, a liner, tin, heating elements, temperature sensors and control systems. The bath is approximately one hundred eighty feet long and contains one hundred eighty tons of molten tin. The tin is chemically inert in the atmosphere of nitrogen and hydrogen used in the bath.

The molten glass is conveyed from the furnace to the tin bath where it floats on top of the molten tin. As it flows upon the tin, the glass is stretched by knurl machines, suspended from the top of the tin bath, to form the desired width and thickness.

The temperature in the tin bath ranges from approximately two thousand degrees Fahrenheit where the glass enters to approximately one thousand degrees at the exit. There are separate zones in the bath that are individually temperature-controlled. The heat is provided by silicon carbide heating elements suspended from the roof of the bath to within one foot of the glass. The elements are heated by the electricity for which AFG seeks exemption.

Approximately five hundred tons of glass are processed daily through the bath. Although the molten tin does not react with the glass and is not consumed in the process, the proof indicated that one to three tons of the tin have to be replaced annually.

Frederick C. Paulson, vice president of engineering for AFG, testified that the tin bath float process replaced rolling machines, drying machines and polishers previously used to make the glass. Also, he stated that the tin acted as a conveying mechanism, as well as a forming surface for the glass.

The issues presented in this appeal involve interpretations of statutes which provide exemptions from sales and use taxes. Several rules of statutory construction guide this Court with respect to the issues in this case. First, the words of a statute should be taken in their ordinary sense without any forced and subtle construction. *Bowater North American Corp. v. Jackson*, 685 S.W.2d 637 (Tenn. 1985). Second, although laws imposing a tax are strictly construed against the taxing authority, tax exemption statutes are strictly construed against the taxpayer,

who has the burden of proving entitlement to the exemption. *See Jersey Miniere Zinc Co. v. Jackson,* 774 S.W.2d 928 (Tenn.1989).

## EXEMPTION FOR INDUSTRIAL MACHINERY—TIN

Pursuant to T.C.A. § 67–6–206(a), industrial machinery is exempt from sales and use taxes. In T.C.A. § 67–6–102(12), as amended in 1984, industrial machinery is defined, in pertinent part, as follows:

(A) Machinery, apparatus, and equipment with all associated parts, appurtenances, and accessories, including repair parts ..., which is necessary to and primarily for the fabrication or processing of tangible personal property for resale....

The chancellor found that the tin purchased and used in the tin bath did not qualify as industrial machinery under this statutory definition. He relied upon the analysis by this Court in *Tibbals Flooring Co. v. Olsen,* 698 S.W.2d 60 (Tenn.1985) and noted that *Tibbals* dealt with the same statute and claim for exemption.

*Tibbals* dealt with the status of a twenty thousand square foot metal building with fans (called a pre-dryer) used to dry lumber and large cylindrical concrete structures with metal cyclones on top (called dust collectors) used to hold sawdust collected through an air filter pollution control system. For the tax year in question, the pertinent part of the statutory definition of industrial machinery was contained in ·T.C.A. § 67–6–102(8) (1983) as follows:

Machinery, including repair parts ..., which is directly and primarily utilized in fabricating or processing tangible personal property for resale, or equipment primarily used for air pollution control ... where the use of such machinery or equipment is by one who engages in such fabrication or processing as his principle business....

The plaintiff claimed that the pre-dryer was industrial machinery and that the dust collectors were equipment used for air pollution control.

In *Tibbals,* this Court looked to ordinary dictionary definitions of machinery and equipment and compared the predominate characteristics of the items in issue to such definitions. Under such an analysis, the predominate characteristic of the pre-dryer was held to relate to it being a "structure" and not machinery. In similar fashion, the dust collectors were determined to be structures used primarily for storage, not being machinery or pollution control equipment.

The *Tibbals* analysis is appropriate in this case, but, as previously indicated, the statutory definition of industrial machinery has been expanded since the tax year involved in *Tibbals* to include "apparatus, and equipment with all associated parts, appurtenances, and accessories." We hold that the tin comes within this expanded definition.

■ An apparatus is defined as the "totality of means by which a designated function is performed or a specific task executed," *The American Heritage Dictionary* (1969), and as "a set of materials or equipment designed for a particular use." *Webster's Ninth New Collegiate Dictionary* (1990). It contemplates a collection of component parts "designed for a specific mechanical or chemical action or operation." *Webster's Third New International Dictionary* (1976).

■ Under these definitions, it is apparent that the tin bath operates as an apparatus whose primary function is to shape and cool the molten glass while conveying the glass from the furnace to the annealing oven for ultimate tempering. The molten tin is an integral part of the bath, performing several functions previously done by rollers and polishers. It is both an accessory to and an associated part of the tin bath apparatus. Also, its primary character in the glass making process is not changed by the fact it is used in its liquid state.

The commissioner, also, seeks to defeat exemption for the tin by arguing that it is "industrial material" which is not consumed within twenty-five consecutive days in the manufacturing process. Pursuant to T.C.A. § 67–6–102(22)(E), tax exempt status is provided for the use, storage or

consumption of industrial materials in the processing, manufacturing, or conversion into a finished product for sale where the materials become a component part of the product or are used directly in the fabrication, conversion or processing of such materials or parts thereof. In this regard, the department of revenue issued Rule 1320–5–1–.40(2) (Rule 40) which added a requirement that the materials coming into direct contact, to be exempt, must be consumed within twenty-five consecutive days.

The term "material" is not otherwise defined by the statute. Obviously, the tin does not become a component part of the finished product, but it does come into direct contact with the glass during the process. However, the direct contact is no different than that of rollers, polishers and conveyance systems used in the industry before the tin bath became state of the art.

In *Phillips & Buttorff Mfg. Co. v. Carson*, 188 Tenn. 132, 217 S.W.2d 1 (1949), the taxpayer sought to exempt, as industrial materials, fire brick used to line furnaces and clay used to line ladles which transferred molten metal from the furnaces to molds. At that time, there was no exemption for industrial machinery. In holding that the brick and clay were not industrial materials, this Court stated: "It can hardly be doubted but that these materials are part of the machinery equipment." 217 S.W.2d at 6. Similarly, in this case, the tin is an accessory to and a part of the tin bath apparatus. Its inclusion within the exemption for industrial machinery precludes any need to assess its status under the industrial materials provisions.

### EXEMPTION FOR ELECTRICITY

Pursuant to T.C.A. § 67–6–206(b)(1), a tax is imposed "with respect to gas, electricity, fuel oil, coal and other energy fuels when sold to or used by manufacturers." However, T.C.A. § 67–6–206(b)(3) provides the following exemption:

Such substances shall be exempt entirely from the taxes imposed by this chapter whenever it may be established to the satisfaction of the commissioner, by separate metering or otherwise, that

they are exclusively used directly in the manufacturing process, coming into direct contact with the article being fabricated or processed by the manufacturer, and being expended in the course of such contact.

The chancellor found that the electricity used to "operate" the silicon carbide heating elements was not exempt because it did not come into direct contact with the glass.

AFG contends that electricity is heat. Thus, it reasons that since the electricity is the source of energy for the heating elements which emit radiant heat absorbed by the glass, then it must be concluded that the electricity comes into direct contact with the glass.

First, we note that electricity is not heat nor is heat considered a form of energy. Heat is the term used to describe energy in transit from one place to another, i.e., the flow of energy. *See* R.H. Romer, *Energy: An Introduction to Physics*, 205 (1976).

In reviewing this issue, we note that the statutory exemption necessarily contemplates that the substances will be expended in the course of their use as energy sources. Gas, fuel oil, coal and other fossil fuels are used to provide chemical energy resulting from the chemical reactions occurring through the process of combustion or burning. *See* Romer, *supra*, at 405. If the chemical energy which is produced by burning fossil fuels comes into contact with articles being made, then the exemption applies.

As opposed to the other substances mentioned in the statute, electricity is not a fuel, but is a form of energy, itself, which must be derived from some other source. Romer, *supra*, at 350. It has characteristics not possessed by the fossil fuels and it may be directly applied, by means of current, to an article being made or processed. This process of electrolysis has some application to industry. On the other hand, when the electrical energy, by means of current, is sent through silicon carbide heating elements, the resistance in the elements converts the electrical energy into

thermal energy which, in turn, is transferred to the article being made by the process of heating. *See Id.* at 305. The electricity does not, by this process, come into direct contact with the glass.

In *Phillips & Buttorff Mfg. Co. v. Carson, supra,* the Court was faced with a claim for exemption for coal and fuel oil used to power generators for operation of machinery in the manufacturing process. At that time, the exemption statute required the energy sources to be used "directly" in the process. The Court defined such term as meaning "in direct contact with, and without the intervention of any person or thing." 217 S.W.2d at 5. In this case, the use of the heating elements constitutes the intervention of another object so as to prevent the electricity from coming into "direct contact" with the article being made.

We recognize that electrical heating units have replaced fossil fuels in many manufacturing processes requiring the direct application of heat in a heating chamber environment. However, under a strict construction of the exemption's application, the statute's requirement that the substance's exemption depends upon its "coming into direct contact with the article being fabricated or processed" is of particular significance to electricity. Absent clear language to the contrary, we do not interpret the exemption in T.C.A. § 67–6–206(b)(3) to apply to electricity which does not directly contact the article as electrical energy. The chancellor was correct in rejecting the claim for exemption for the electricity used in the silicon carbide heating elements.

■ Also, we have previously stated that in order for the exemption provided by T.C.A. § 67–6–206(b)(3) "to be operative 'the commissioner [must first determine] that the use of such substances by a manufacturer meets said test' in T.C.A. § 67–6–206(b)(2) and 'issue a certificate evidencing the entitlement of the manufacturer to the exemption....'" *Tennessee Farmers' Cooperative v. State,* 736 S.W.2d 87, 91 (Tenn.1987). Procedurally, subsection 206(b)(3) provides for review of the commis-sioner's grant or denial of a certificate "solely by a petition for common law certiorari addressed to the chancery court of Davidson County."

Thus, by the procedures provided in subsection 206(b)(3), the legislature has required the issuance of the certificate to be a condition precedent to the exemption being available. By requiring that the review of the commissioner's certification action proceed as provided in the subsection, we do not view that the legislature contemplated an after-the-fact attempt to apply the exemption for the first time through means of a tax refund suit. Failure by a manufacturer to seek or obtain certification pursuant to the statutory procedural requirements renders the exemption inapplicable. In this regard, there is no proof in the record of the existence of such an application or certification covering the tax periods in question. *See Tennessee Farmers' Cooperative v. State, supra,* 736 S.W.2d at 91 n. 2. The lack of compliance with a certificate requirement may defeat the claim for exemption. *See Scholl, Inc., v. Jackson,* 731 S.W.2d 893, 894–895 (Tenn. 1987).

### CONCLUSION

We hold that the tin used in AFG's glass making operation is exempt from sales and use taxes under T.C.A. § 67–6–206(a), but that AFG is not entitled to full exemption from such taxes for the electricity used in heating the silicon carbide elements in the tin bath float process. Costs of the appeal will be taxed equally to the parties. Costs in the trial court will be fixed by the chancellor. The cause is remanded for a calculation of the refund plus interest due AFG as to the tax assessed on the tin and for any question regarding fees or interest under T.C.A. § 67–1–1803(d). *See South Central Bell Telephone v. Celauro,* 754 S.W.2d 605, 609 (Tenn.1988).

DROWOTA, O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.