**TIBBALS FLOORING COMPANY,**
Plaintiff–Appellant,

v.

**Joe HUDDLESTON, Commissioner of
Revenue of the State of Tennessee,**
Defendant–Appellee.

Supreme Court of Tennessee,
at Knoxville.

Dec. 12, 1994.

Dale C. Allen, Richard S. Matlock, Woolf, McClane, Bright, Allen & Carpenter, Knoxville, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Michael E. Moore, Sol. Gen., Michael W. Catalano, Associate Sol. Gen., Steven E. Winn, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

ANDERSON, Chief Justice.

We granted this appeal to decide whether the Commissioner of Revenue correctly assessed use taxes against the taxpayer with respect to certain components used to construct a dry kiln, and with respect to a spoils removal and dust piping system, both of which were used by the taxpayer in its facility for the manufacture of parquet wood floors.

The Chancery Court abated the assessed use taxes, concluding that both the components of the dry kiln and the spoils removal system were exempt from taxation because they were "industrial machinery," pursuant to Tenn.Code Ann. § 67–6–102(12)(A) & (D) (1989). The Court of Appeals reversed the trial court's ruling as to the exemption of the components, determining that the dry kiln was a building and not industrial machinery, and therefore, subject to taxation. As to the spoils removal and dust piping system, the Court of Appeals affirmed the trial court, finding the system to be industrial machinery necessary to and primarily for the generation of steam and electricity. We affirm the Court of Appeals' judgment for the reasons set out below.

### FACTS

The taxpayer, Tibbals Flooring Company ("Tibbals"), is engaged in manufacturing parquet wood flooring in Oneida, Tennessee. Tibbals obtains its raw material by purchasing green lumber from surrounding sawmills. Because the moisture content of lumber used to manufacture parquet flooring must be lowered to 9 percent, it is first stored in prefabricated aluminum buildings known as predryers. The pre-dryer, by virtue of a number of fans and heat pipes, lowers the moisture content of the lumber to 25 percent. Thereafter, to attain the 9 percent level, the lumber is moved from the pre-dryer to the dry kiln.

A dry kiln is a building constructed of a concrete floor base, double panel walls, consisting of an exterior piece of aluminum and an interior piece of aluminum, with insulation between the two, and a metal roof, similarly constructed, containing several fans and vents. The walls are joined with exterior aluminum strips, which are caulked and riveted together. The interior aluminum wall is sprayed with a tar based coating to prevent moisture from seeping into or out of the structure. The dry kiln houses a series of heating pipes, live steam pipes, and a number of fans, all of which are used in the process of reducing the moisture content of the lumber.

After the moisture level of the lumber reaches a uniform level of 9 percent, the lumber is then sawed and planed in various buildings at the Tibbals manufacturing facility. A system of fans and vacuums located near cutting, milling, and sanding machines on the production floor of the plants remove the sawdust and wood shavings into pipes and conduits which transport the sawdust to a "pneumatic bag collector." From this collector, other pipes and conduits transport the sawdust to boilers, where the sawdust is utilized as a fuel to generate steam for the dry kiln and electricity for the manufacturing operations. A specially designed truck with an enclosed bed is used to transport wood waste from one manufacturing plant that is approximately two miles away from the Tibbals boiler operation, and therefore, has been categorized by the parties as part of the spoils removal and dust piping system.

This case arises from the audit period January 1986 through June 1989, for which the Commissioner assessed use taxes for components used in constructing Tibbals dry kiln, specifically the concrete used for the flooring, the metal walls and roof, and the insulation used in the walls and roof, and for materials used in the spoils removal and dust piping system, including materials used to construct the pipeline across the Tibbals's property and the specially designed truck. Applying

the use tax statute to the foregoing facts, the Court of Appeals determined the spoils removal and dust piping system were exempt from tax because they were industrial machinery, but found the dry kiln was a building and not industrial machinery, citing as authority for its holding, this Court's decision in *Tibbals Flooring Co. v. Olsen,* 698 S.W.2d 60 (Tenn.1985) (*"Tibbals I"* ), in which we held, under the statute in effect at that time, that a pre-dryer is not exempt as industrial machinery.[1]

## INDUSTRIAL MACHINERY

In this Court, both the taxpayer and the Commissioner challenge the Court of Appeals' decision. Tibbals contends that the dry kiln is properly classified as industrial machinery, rather than a building, and as such, is exempt from taxation. The Commissioner argues that the exemption for machines used for generating, producing, and distributing electricity and steam applies only to the equipment actually producing the electricity or steam, and would not include the dust piping system which only transports the sawdust used to produce the electricity and steam.

■■■ Because this case requires us to construe and apply an exemption in the use tax statute, we review the familiar rules that are applicable. First, our role in construing statutes is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. *State v. Sliger,* 846 S.W.2d 262, 263 (Tenn.1993). Next, we must determine the legislative intent, whenever possible, from the plain language of the statute, "read in the context of the entire statute, without any forced or subtle construction which would extend or limit its meaning." *National Gas Distributors, Inc. v. State,* 804 S.W.2d 66, 67 (Tenn.1991). Since exemptions in tax statutes are strictly construed against the taxpayer, the burden is on the taxpayer to establish its exemption. Every presumption is against the exemption and a well-

founded doubt is fatal to the claim. *Kingsport Publishing Corp. v. Olsen,* 667 S.W.2d 745 (Tenn.1984); *Shearin v. Woods,* 597 S.W.2d 895 (Tenn.1980); *Woods v. General Oils, Inc.,* 558 S.W.2d 433 (Tenn.1977). Moreover, when, as here, there is no conflict in the evidence as to any material fact, the question on appeal is one of law, and our scope of review is *de novo* with no presumption of correctness accompanying the conclusions of law. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993).

Pursuant to Tenn.Code Ann. § 67–6–206(a) (1989 & Supp.1994), industrial machinery is exempt from sales and use tax after June 30, 1983. "Industrial machinery" is defined by Tenn.Code Ann. § 67–6–102(12)(A) & (D)(i) (1989), as amended in 1984, in pertinent part as follows:

(A) *Machinery, apparatus, and equipment with all associated parts, appurtenances, and accessories,* ... which is necessary to and primarily for the fabrication or processing of tangible personal property for resale, and consumption off the premises or equipment primarily used for air pollution control or water pollution control....

(D) Such industrial machinery ... includes, but is not limited to:

(i) Machines used for generating, producing, and distributing utility services, electricity, steam, and treated or untreated water....

(Emphasis added.)

■ In determining whether property is exempt from use taxes as industrial machinery, the threshold question is whether the property is "machinery, apparatus or equipment, with all associated parts, appurtenances, and accessories."

In considering the question of whether a pre-dryer is exempt from use taxes as industrial machinery, this Court in *Tibbals I, supra,* defined the terms "machinery" and "equipment" as follows:

---

1. At that time, "industrial machinery," was defined as "machinery, including repair parts ..., which is directly and primarily utilized in fabricating or processing tangible personal property for resale, or equipment primarily used for air pollution control ... where the use of such machinery or equipment is by one who engages in such fabrication or processing as his principle business...." Tenn.Code Ann. § 67–6–102(8) (1983).

"the word **'machinery'** means 'machines as a functioning unit;' and **'equipment'** is 'the physical resources serving to equip a person [such as] the implements (as machinery or tools) used in an operation or activity ... all the fixed assets other than land and buildings of a business enterprise.'" *Id.*, 698 S.W.2d at 62, (emphasis added) (quoting, Webster's, *Third new International Dictionary* (1976)). More recently, in *AFG Industries, Inc. v. Cardwell*, 835 S.W.2d 583, 585 (Tenn.1992), this Court decided that molten tin located in a tin bath used to shape and cool molten glass while conveying it from a furnace to an annealing oven was exempt from use taxes as industrial machinery. We characterized the tin bath as an "apparatus," and said that the molten tin was an accessory to and part of the tin bath apparatus. We defined that term, in part, as the "totality of means by which a designated function is performed or a specific task executed," *The American Heritage Dictionary* (1969), and as

"a set of materials or equipment designed for a particular use." *Webster's Ninth New Collegiate Dictionary* (1990). It contemplates a collection of component parts "designed for a specific mechanical or chemical action or operation." *Webster's Third New International Dictionary* (1976).

*Id.*

Applying these definitions, it is clear that the assessment of use taxes as to the parts which compose the dry kiln was correct. The dry kiln is composed of a concrete floor, metal walls and roof and insulation. Although the dry kiln is, no doubt, a specially insulated building, it is just that, an insulated building. It cannot be characterized as "machines functioning as a unit," although it does house machines which function as a unit. Nor can it appropriately be considered "a collection of component parts 'designed for a specific mechanical or chemical action or operation.'" Although the dry kiln houses a collection of component parts that are designed to lower the moisture level of lumber, the dry kiln itself is simply the structure that houses the machines. There is nothing in the record to suggest that the dry kiln could not also adequately accommodate other types of machinery if necessity required. Certainly, a dry kiln cannot reasonably be described as "equipment," which has been specifically defined as excluding buildings.

The dry kiln is also readily distinguishable from the grain bins at issue in *Harry J. Whelchel Co. v. King*, 610 S.W.2d 710 (Tenn. 1980), which were held to be farm equipment and machinery. Five men could disassemble a grain bin completely in three to four hours using only impact wrenches, move the grain bin to another location, and reassemble it in eight to ten hours, which supports its classification as machinery. Although possible, disassembly of the dry kiln would require a crew of workers and a 50–foot boom truck. The concrete floor, as well as the conduits for electricity and steam, would remain after disassembly.

Cases from other jurisdictions are not determinative of the issues involved in this appeal. In all the cases cited, the controlling statutes and authority are significantly different from the statutes and authority applicable in Tennessee.

In this case, we conclude that the Commissioner's use tax assessment with respect to those parts of the dry kiln constituting the building—the metal walls and roof, the concrete floor, and the insulation—was correct pursuant to the Tennessee use tax statute. Taxes were not assessed against the industrial machinery inside the building, "the collection of component parts 'designed for a specific mechanical or chemical action or operation,'" which, in this instance, reduced the moisture level of the lumber to 9 percent. Accordingly, the Court of Appeals' judgment upholding the use tax assessment on the dry kiln is affirmed.

We next consider whether the spoils removal and dust piping system is exempt from use taxes as industrial machinery. Again, the threshold question is whether the system is "machinery, apparatus or equipment, with all associated parts, appurtenances, and accessories" as those terms have been defined in prior decisions of this Court. It does not appear that the Commissioner disputes that the system at issue, including the specially designed truck, is "industrial machinery." Instead, the Commissioner contends that the system is subject to use taxa-

tion because it is composed of machines that only *transport* wood waste to the machines, boilers in this instance, which actually generate and produce the steam and electricity, and which the Commissioner concedes are exempt from taxation.

We disagree. The construction advanced by the Commissioner is strained and does not comport with the plain language of the statute, "read in the context of the entire statute, without any forced or subtle construction which would extend or limit its meaning." *National Gas Distributors, Inc. v. State*, 804 S.W.2d at 67. The spoils removal and dust piping system consists of machines that, in combination with the boilers, generate and produce electricity and steam. Although the system does not actually produce electricity and steam, it consists of machines that are *used* to produce electricity and steam. Construing the exemption strictly against the taxpayer, as we are required to do, we conclude that the Chancellor and the Court of Appeals correctly abated the use tax assessment with regard to the spoils removal and dust piping system because it is composed of "[m]achines used for generating, producing, and distributing utility services, electricity, steam . . . ." Tenn.Code Ann. § 67–6–102(D)(i). Accordingly, the Court of Appeals' judgment is affirmed.

### *CONCLUSION*

We hold that the dry kiln is not industrial machinery and, accordingly, the use tax assessment on the concrete floor, the metal walls and roof, and insulation which composed the dry kiln building was correct. Abatement of the use tax assessment for the spoils removal and dust piping system was also correct because the system is industrial machinery and exempt from use taxes. The Court of Appeals' judgment is, therefore, affirmed in its entirety. Costs of this appeal will be taxed equally to the parties. The cause is remanded to the Chancellor for further proceedings consistent with this opinion.

DROWOTA, REID and BIRCH, JJ., and O'BRIEN, Senior Judge, concur.