**EASTMAN CHEMICAL COMPANY**

v.

**Ruth E. JOHNSON, Commissioner of Revenue, State of Tennessee.**

Supreme Court of Tennessee,
at Nashville.

Oct. 7, 2004 Session.

Nov. 24, 2004.

---

Brett R. Carter, Charles A. Trost and Michael G. Stewart, Nashville, Tennessee, for the appellant, Eastman Chemical Company.

Paul G. Summers, Attorney General and Reporter; Joseph F. Whalen, Associate Solicitor General; and Charles L. Lewis, Deputy Attorney General, for the appellee, Ruth E. Johnson, Commissioner of Revenue, State of Tennessee.

Jay Stapp, Nashville, Tennessee, for the Amicus Curiae, Bridgestone/Firestone North American Tire, LLC.

M. Kimberly Stagg, Smyrna, Tennessee, for the Amicus Curiae, Nissan North America, Inc.

Carl E. Hartley and John M. Phillips, Chattanooga, Tennessee, and Sandi L. Pack, Nashville, Tennessee, for the Amicus Curiae, Tennessee Chamber of Commerce & Industry.

## OPINION

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON and JANICE M. HOLDER, JJ., and ALLEN WALLACE, Sr.J., joined.

The sole issue in this case is whether certain chemical catalysts used by East-man Chemical Company fall within the industrial machinery exemption to the Tennessee sales and use tax statute, Tennessee Code Annotated sections 67–6–101 et seq. (2003). The trial court granted summary judgment in favor of the taxpayer. The Court of Appeals reversed, dismissing the taxpayer's complaint seeking refunds for 1995, 1996 and 1997 based on the Court of Appeals' determination that the chemical catalysts used by the taxpayer did not come within the definition of "industrial machinery" in Tennessee Code Annotated section 67–6–102(13)(A) (1998). We reverse the Court of Appeals and reinstate the decision of the trial court granting summary judgment in favor of the taxpayer.

## FACTUAL BACKGROUND

Eastman Chemical Company ("Eastman") is a Delaware corporation with its principal place of business in Kingsport, Tennessee. It manufactures various types of chemicals and plastics. Eastman regularly uses three types of catalysts[1] in its manufacturing processes—"fixed-bed" catalysts,[2] "batch" catalysts,[3] and cobalt hy-

---

1. A catalyst is a material that speeds up a chemical reaction without itself being consumed in the process. While the catalyst participates in the chemical reaction, it is unchanged when the reaction is complete.

2. "Fixed-bed" catalysts are ceramic or metallic-like pellets of varying shapes and sizes that are placed inside large vertical tubes or other vessels. These vessels have holes or screens at the top and filters at the bottom. The product ingredients are introduced into the vessel at the top and passed through the catalyst bed under the conditions necessary to produce the required product. The "fixed-bed" catalysts remain in the vessel to be reused until such time as they are contaminated or otherwise lose their ability to effectively promote the desired reaction. This period may be as short as three months or as long as thirty years.

3. "Batch" catalysts are used in closed-loop manufacturing processes in which the catalysts circulate through a system which includes a reaction chamber. In this reaction chamber, the "batch" catalysts come in contact with the product ingredients and in so doing, the catalysts promote the necessary chemical reactions. The result of the completed reaction is a "slurry" containing the chemical end product and the "batch" catalysts. This slurry is passed through a filter which separates the product from the catalysts. The catalysts continue to circulate through the system while the products are withdrawn from the reaction chamber. The life span of these catalysts ranges from seven to thirty days.

drate.[4] The catalysts used by Eastman are essential to the production of Eastman's chemical products, and the vertical tubes, reaction chambers, vessels and other items of equipment used by Eastman in the production process are specifically designed to work in conjunction with the catalysts.

From January 1995 through December 1997, Eastman paid the State of Tennessee $1,254,976.48 in use tax for the various catalysts used during that period. On January 1, 1998, Eastman ceased paying use tax on the catalysts used in its manufacturing processes because it decided that they were exempt from taxation either as industrial materials or as industrial machinery. On December 29, 1998, Eastman filed a claim with the Tennessee Department of Revenue ("Department") seeking a refund for the tax years of 1995, 1996 and 1997, asserting that it erroneously paid use tax on the catalysts. The Department denied Eastman's claimed exemptions.

Eastman filed a complaint in Chancery Court against the Commissioner of Revenue, pursuant to Tennessee Code Annotated section 67–1–1802(c)(1) (2003), seeking a refund of $1,254,976.48 for tax years 1995, 1996 and 1997. Eastman alleged that the catalysts were exempt from the use tax as industrial machinery, as defined in Tennes-

see Code Annotated section 67–6–102(13)(A) (1998).[5] Eastman amended its complaint to allege in the alternative that the cobalt hydrate catalysts were exempt as industrial materials.[6]

Eastman filed a motion for summary judgment, which was granted by the trial court on June 29, 2002. The trial court relied upon *AFG Indus. Inc. v. Cardwell,* 835 S.W.2d 583 (Tenn.1992), to determine that the catalysts used by Eastman were industrial machinery as defined by the statute and therefore exempt from use tax. The Commissioner appealed.

The Court of Appeals reversed the trial court and dismissed Eastman's entire complaint against the Department.[7] The Court of Appeals found that the exemption for industrial machinery in Tennessee Code Annotated section 67–6–102(13)(A) (1998) cannot be extended to include the catalysts Eastman uses in its manufacturing process.

## ANALYSIS

Issues of statutory construction are questions of law that this Court reviews de novo without any presumption of correctness. *Bryant v. Genco Stamping & Mfg. Co.,* 33 S.W.3d 761, 765 (Tenn.2000); *Freeman v. Marco Transp. Co.,* 27 S.W.3d 909, 911 (Tenn.2000).

---

4. Cobalt hydrate is also used in a closed-loop system, although unlike the "batch" catalysts, some of the cobalt. hydrate ultimately becomes a small part of the finished product (less than 100 parts per million).

5. The definition of industrial machinery is currently codified at Tennessee Code Annotated section 67–6–102(16) (2004 Supp.). For clarity, however, we will use the same reference to the definition as was used in the court below—Tennessee Code Annotated section 67–6–102(13)(A) (1998).

6. At the time of this dispute, Tennessee's sales and use tax statutes also exempted industrial

materials under Tennessee Code Annotated section 67–6–102(24)(E)(i) (1998).

7. The Department concedes that the Court of Appeals erred in dismissing the entire complaint because the issue of whether the cobalt hydrate was exempt as industrial materials was not part of the motion for summary judgment and was not ruled upon by the trial court, nor was the issue raised before the Court of Appeals. This issue is now moot, however, because we find that the cobalt hydrate, along with the other catalysts, are exempt as industrial machinery.

Our duty in construing statutes is to ascertain and give effect to the intention and purpose of the legislature. *See Lipscomb v. Doe,* 32 S.W.3d 840, 844 (Tenn.2000); *Freeman,* 27 S.W.3d at 911. " 'Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language.' " *Lipscomb,* 32 S.W.3d at 844 (quoting *Hawks v. City of Westmoreland,* 960 S.W.2d 10, 16 (Tenn.1997)).

When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application. *See id.; Carson Creek Vacation Resorts, Inc. v. State Dep't of Revenue,* 865 S.W.2d 1, 2 (Tenn.1993). Where an ambiguity exists, we must look to the entire statutory scheme and elsewhere to ascertain the legislative intent and purpose. *State v. Walls,* 62 S.W.3d 119, 121 (Tenn. 2001); *Freeman,* 27 S.W.3d at 911. The statute must be construed in its entirety, and it should be assumed that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose. *Tennessee Growers, Inc. v. King,* 682 S.W.2d 203, 205 (Tenn.1984). The background, purpose, and general circumstances under which words are used in a statute must be considered, and it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning. *First Nat'l Bank of Memphis v. McCanless,* 186 Tenn. 1, 207 S.W.2d 1007, 1009–10 (1948).

In addition to general principles of statutory construction, we must also consider the rules of construction specifically applicable to tax statutes. Statutes imposing a tax are to be construed strictly against the taxing authority. *See Covington Pike Toyota, Inc. v. Cardwell,* 829 S.W.2d 132, 135 (Tenn.1992). However, statutes granting exemptions from taxation are construed strictly against the taxpayer. *Tibbals Flooring Co. v. Huddleston,* 891 S.W.2d 196, 198 (Tenn.1994); *Covington Pike Toyota,* 829 S.W.2d at 135.

*The Exemption of Eastman's Catalysts Under Tennessee Code Annotated section 67–6–102(13)(A) (1998).*

Pursuant to Tennessee Code Annotated section 67–6–206(a) (2003), industrial machinery is exempt from sales and use taxes. Prior to 1984, industrial machinery was defined as:

> Machinery, including repair parts and any necessary repair or taxable installation labor therefor, which is directly and primarily utilized in fabricating or processing tangible personal property for resale ... where the use of such machinery or equipment is by one who engages in such fabrication or processing as his principal business either within or without this state.

Tenn.Code Ann. § 67–6–102(8) (1983). An amendment in 1984 expanded the definition of industrial machinery to read:

> Machinery, apparatus and equipment with all associated parts, appurtenances and accessories, including hydraulic fluids, lubricating oils, and greases necessary for operation and maintenance, repair parts and any necessary repair or taxable installation labor therefor, which is necessary to, and primarily for, the fabrication or processing of tangible personal property for resale and consumption off the premises, ... where the use of such machinery, equipment or facilities is by one who engages in such fabri-

cation or processing as one's principal business....

Tenn.Code Ann. § 67–6–102(13) (1998).

There is no dispute that the catalysts are necessary to and primarily for the fabrication or processing of tangible personal property for resale or consumption and that Eastman is a manufacturer. The only issue in dispute is whether the catalysts used by Eastman are "[m]achinery, apparatus and equipment with all associated parts, appurtenances and accessories." Tenn.Code Ann. § 67–6–102(13)(A) (1998).

In *AFG Indus. Inc. v. Cardwell,* 835 S.W.2d 583 (Tenn.1992), we were asked to interpret the definition of "industrial machinery" as amended in 1984. At issue in *AFG Indus.* were tin ingots purchased by the taxpayer for use in a molten tin bath as part of its glass production. During the manufacturing process, molten glass was floated on the molten tin bath, which acted as a conveying mechanism and a surface on which the glass was shaped. 835 S.W.2d at 584. The lower courts relied upon our decision in *Tibbals Flooring Co. v. Olsen,* 698 S.W.2d 60 (Tenn.1985) ("*Tibbals I* "), in holding that the tin purchased for this process did not qualify for the industrial machinery exemption. *AFG Indus.,* 835 S.W.2d at 585. On appeal, we reversed, explaining that the lower court's reliance on *Tibbals I* failed to account for the new language added in 1984 to the industrial machinery definition. *Id.* We explained:

> In *Tibbals,* this Court looked to ordinary dictionary definitions of machinery and equipment and compared the predominate characteristics of the items in issue to such definitions....
> The *Tibbals* analysis is appropriate in this case, but, as previously indicated, *the statutory definition of industrial machinery has been expanded* since the tax year involved in *Tibbals* to include

"apparatus, and equipment with all associated parts, appurtenances, and accessories." We hold that the tin comes within this expanded definition.

*Id.* (Emphasis added.)

In determining what was included in this expanded definition, we looked at the plain meaning of the words used in the statute:

> An apparatus is defined as the "totality of means by which a designated function is performed or a specific task executed," *The American Heritage Dictionary* (1969), and as "a set of materials or equipment designed for a particular use." *Webster's Ninth New Collegiate Dictionary* (1990). It contemplates a collection of component parts "designed for a specific mechanical or chemical action or operation." *Webster's Third New International Dictionary* (1976).

*Id.* Applying these definitions, we found that "[t]he molten tin is an integral part of the bath" and, as such, was "both an accessory to and an associated part of the tin bath apparatus." *Id.* We also noted that the tin's "primary character in the glass making process is not changed by the fact that it is used in its liquid state." *Id.*

We again applied a similar "totality of means" test in *Tibbals Flooring Co. v. Huddleston,* 891 S.W.2d 196 (Tenn.1994) ("*Tibbals II* "). In *Tibbals II,* we held that a system of fans and vacuums which removed sawdust and wood shavings from a wood cutting and sanding operation and delivered them to boilers for creating steam and electricity was industrial machinery. 891 S.W.2d at 200. The Commissioner argued that this system was not industrial machinery because it only transported the wood waste to steam-generating industrial machinery rather than actually producing the steam directly. We rejected this interpretation:

The construction advanced by the Commissioner is strained and does not comport with the plain language of the statute, "read in the context of the entire statute, without any forced or subtle construction which would extend or limit its meaning." The spoils removal and dust piping system consists of machines that, in combination with the boilers, generate and produce electricity and steam. Although the system does not actually produce electricity and steam, it consists of machines that are *used* to produce electricity and steam.

*Id.* (quoting *Nat'l Gas Distrib., Inc. v. State*, 804 S.W.2d 66, 67 (Tenn.1991)).

In the case under submission, the trial court found that the catalysts used by Eastman were "part of the totality of means whereby the processes are accomplished and integral to the process," and therefore fell within the definition of industrial machinery as set forth in *AFG Indus.* We agree.

*Tibbals II* and *AFG Indus.* establish that all components integral to manufacturing or processing are exempt under the definition of industrial machinery, whether or not they fit the traditional concept or image of "machinery," or the pre–1984 definition of machinery. *Tibbals II,* 891 S.W.2d at 200; *AFG Indus.,* 835 S.W.2d at 585. In its manufacturing processes, Eastman uses the catalysts in conjunction with various tubes, reaction chambers, vessels and other items of equipment which cannot operate without the catalysts. Clearly, the catalysts are not part of the ingredients that go into making the products, in that the catalysts are not consumed during the process. Rather, the catalysts are reused for months or even years. Instead of being processed, the catalysts perform the processing function by triggering the chemical reactions that turn raw materials into saleable products.

The Court of Appeals held that the catalysts were not included in the exemption for industrial machinery because they could not be classified as "machinery, apparatus [or] equipment." First, the Court of Appeals looked to the legislative history of the 1984 amendment, and found that it did not expand the definition of industrial machinery:

The 1984 addition of the words "apparatus" and "equipment" to the definition of industrial machinery in Tenn.Code Ann. § 67–6–102(a)(13)(A) does not necessarily reflect the General Assembly's desire to broaden the existing exemption far beyond the legislator's collective understanding of the meaning of "machinery." While the dictionary definitions of "machinery," … "apparatus," and "equipment" differ slightly, they are essentially synonymous.

However, this interpretation is contrary to our holding in *AFG Indus.*, where we specifically found that the amendment with its additional words expanded the definition of industrial machinery. Moreover, the court's reliance on legislative history is misplaced because in *AFG Indus.,* we found the language of the statute to be plain and unambiguous. *Compare Lipscomb,* 32 S.W.3d at 844 (when the statutory language is clear and unambiguous, we apply its plain meaning in its normal and accepted use) *with Walls,* 62 S.W.3d at 121 (where an ambiguity exists, we look to the entire statutory scheme and elsewhere to ascertain the legislative intent and purpose).

The Court of Appeals interpreted the definition of industrial machinery as follows:

The phrase "machinery, apparatus and equipment" is broad enough to include (1) the devices conveying the materials and components from one part of the manufacturing or fabricating process

to another, (2) the devices such as stamping machines, presses, caldrons, vats, vessels, or chambers where the fabricating or processing occurs, and (3) the devices used to convey the finished products to packing or storage. However, it does not include the fuel used to run the manufacturing devices, the water or other substances used to cool the manufacturing devices or materials, the building housing the manufacturing devices, or the real property on which the manufacturing facility is located. Similarly, it does not include the raw materials or components used to produce the finished items of tangible personal property.

The flaw lies more in the application of this definition to the catalysts used by Eastman than in the definition itself. Contrary to the Court of Appeals' suggestion, the catalysts are not raw materials or ingredients used in the production of the goods. Like the tin ingots at issue in *AFG Indus.*, the catalysts used by Eastman are components of the equipment and apparatus used in the manufacturing processes, and do not become part of the final product. The catalysts are an integral part of the totality of means whereby the manufacturing processes are accomplished.

## CONCLUSION

In summary, we hold that the catalysts used by Eastman fall within the definition of industrial machinery because they are integral parts of the equipment and apparatus used by Eastman. Therefore, the Court of Appeals' dismissal of the complaint is reversed, and the trial court's grant of summary judgment is reinstated.

1. This case was heard as part of the October 8, 2004, S.C.A.L.E.S. (Supreme Court Advancing Legal Education for Students) project in Franklin, Williamson County, Tennessee. This was the Court's 31st S.C.A.L.E.S. project

Costs of this appeal are taxed to the State of Tennessee.