IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
December 13, 2012 Session

## DEBBIE WEST, Individually and as the Surviving Spouse of WILLIAM P. WEST, Deceased v. AMISUB (SFH), INC., d/b/a ST. FRANCIS HOSPITAL, ET AL.

Direct Appeal from the Circuit Court for Shelby County
No. CT-003211-11      Robert L. Childers, Judge

No. W2012-00069-COA-R3-CV - Filed March 21, 2013

PARTIAL DISSENT

ALAN E. HIGHERS, P.J., W.S., PARTIALLY DISSENTING

In this case, the majority concludes that the plaintiff's payment of $211.50 to the General Sessions Court clerk and her posting of an additional $250.00 cash bond satisfied the requirements of Tennessee Code Annotated section 27–5–103, and therefore, that the Circuit Court erred in *sua sponte* dismissing her appeal for lack of subject-matter jurisdiction. The majority further concludes, however, that the trial court properly granted summary judgment in favor of the defendants due to the plaintiff's failure to comply with the certificate of good faith requirement. I disagree with the majority's conclusion that the plaintiff satisfied the requirements of Tennessee Code Annotated section 27-5-103 so as to properly perfect her appeal from the general sessions court to the circuit court. I would find that the requirements of section 27-5-103 were not satisfied because the fee paid and the bond posted were insufficient to secure all costs incurred throughout the appeal, and, therefore, that the circuit court never acquired subject matter jurisdiction in the cause. Although I would rely upon divergent grounds, however, I fully concur in the majority's ultimate dismissal of the case.

In reaching its conclusion that the trial court erred in *sua sponte* dismissing the case for lack of subject matter jurisdiction, the majority relies upon the recent case of *Bernatsky v. Designer Baths & Kitchens, LLC*, No. W2012–00803–COA–R3–CV, 2013 WL 593911 (Tenn. Ct. App. Feb. 15, 2013). Because I believe *Bernatsky* is based upon a flawed premise, I respectfully disagree with this conclusion.

The *Bernatsky* majority finds it appropriate to overrule two previous decisions of this Court, which squarely address the issue presented in *Bernatksy*, and in which the Supreme Court recently denied permission to appeal: *Jacob v. Partee*, No. W2012–00205–COA–R3–CV, 2012 WL 3249605 (Tenn. Ct. App. Aug. 10, 2012) *perm. app. denied* (Tenn. Dec. 12, 2012) and *University Partners Development v. Bliss*, No. M2008–00020–COA–R3–CV, 2009 WL 112571 (Tenn. Ct. App. W.S. Jan. 14, 2009) *perm. app. denied* (Tenn. Aug. 17, 2009). In both *Jacob* and *University Partners*, this Court held that an appellant who sought to appeal from general sessions court to circuit court could not satisfy the bond requirements of Tennessee Code Annotated section 27–5–103 by merely remitting payment of the initial filing fee. In both cases, this Court reasoned that payment of the initial filing fee did not constitute giving "bond with good security" for "the cost of the cause on appeal[,]" and therefore, that the circuit court never acquired jurisdiction over the attempted appeal. *See Jacob*, 2012 WL 3249605, at *3; *Univ. Partners*, 2009 WL 112571, at *3. *In Jacob*, we expressly rejected the appellants' argument that section 27–5–103 was ambiguous. 2012 WL 3249605, at *2. Instead, we found that "[t]he requirements of a 'bond with good security' could not be more clear: an appeal bond which secures all costs incurred throughout the appeal, as opposed to an initial appeal filing fee, is required." *Id.* at *2.

Just two months after the Supreme Court denied permission to appeal in *Jacob*, however, a different panel of this Court, in an apparent effort to overcome perceived difficulties in securing a bond to cover circuit court costs, suddenly discovered ambiguities within section 27–5–103 which, in its opinion, necessitated consideration of copious amounts of legislative history. In fact, the *Bernatksy* majority suddenly located not one, but two, ambiguities within section 27–5–103.[1] First, the majority found that "the costs of the appeal" "'may refer to the costs of the entire appeal taxed at the conclusion of the litigation ... or it may simply refer to a 'fee' charged by the court to commence litigation.'" *Bernatsky*, 2013 WL 593911, at *6. Additionally, the majority found that section 27–5–103(a)'s use of the phrase "as hereinafter provided" created an ambiguity because, it reasoned, the phrase "could be a reference to giving further definition regarding any number of facts, such as the type of security given, the amount of the bond, whether the 'cost' is a designated cost for commencing or initiating that appeal or for all of the costs that will ever be incurred in the case, or some other factor entirely." *Id.*

Based upon these perceived ambiguities, the *Bernatsky* majority consulted the legislative history of the 1988 amendment to section 27–5–103. The majority noted that the amendment was a legislative response to the case of *Maddock, Kenny & Associates, Inc. v. Management Assistance and Service, Inc.*, 1986 WL 8811 (Tenn. Ct. App. Aug. 14, 1986), in which this

---

[1]It is significant that in the entire history of the statute, no court prior to *Bernatsky* had ever found an ambiguity.

Court held that a defendant appealing to circuit court was required to post a bond in the amount of the judgment rendered against him in the general sessions court. The majority acknowledged that the legislative discussion centered on whether a bond to cover the general sessions judgment against an appealing defendant was statutorily required. However, the majority held tight to this Court's statement in *Maddock* that "[i]n the case of an appealing plaintiff, the appeal bond, 'with good security,' must be in the minimum amount of $250 for costs[,]" and it insisted that the absence of legislative discussion regarding the plaintiff's appeal requirements necessarily indicated its conclusion that payment of the initial filing fee satisfied the requirements of 27–5–103.

Beyond the absence of legislative discussion regarding the amount of a plaintiff's bond, the *Bernatsky* majority clung to the concern of at least some legislators that requiring a bond in the amount of the judgment would create a detriment to the "working poor" and, in effect, foreclose the class' ability to bring an appeal. The majority then presumed that requiring an appeal bond to cover all of the court costs on appeal--which, of course, would not include the amount of the general sessions judgment--would likewise deprive would-be appellants of their day in court.

Finally, in discussing section 27–5–103's alleged ambiguity, the *Bernatsky* majority focused upon cases which, in considering other issues, merely referenced the payment of a sum certain, and it again focused on legislative inaction in the face of these judicial references.

The majority then concluded--in light of the absence of legislative discussion requiring the payment of a sum certain, some legislators' concerns regarding the working poor's ability to secure a bond covering a judgment, and legislative inaction following judicial references to a sum certain—that the requirements of section 27–5–103 are satisfied by the payment of an amount certain "to be determined 'as hereinafter provided[.]'" *Id.* at *12 (quoting Tenn. Code Ann. § 27–5–103(a)). It then determined that section 27–5–103's requirement that an appealing party "give bond with good security" could be satisfied either by remittance of a cash payment or the filing of a surety bond.

Finally, in an effort to determine the amount of the requisite payment or bond, the majority consulted Tennessee Code Annotated section 8–21–401. Because sections 27–5–103 and 8–21–401 both "relate to ... the commencement of an appeal from General Sessions court to Circuit court[,]" the *Bernatsky* majority concluded that "Section 8–21–401(b)(1)(C)(I) was intended by the legislature to dovetail with Section 27–5–103, to supply the amount of 'the costs of the appeal' that are to be secured by the statutory appeal bond." *Id.* at *17. However, the majority acknowledged that section 8–21–401 does not reference section 27–5–103, and therefore, it somehow found it appropriate to consider the legislative history of section 8–21–401.

The *Bernatsky* majority stated that section 8–21–401 was intended to address both a lack of uniformity in court costs and monies lost in uncollected court costs. According to the majority, the legislative history of section 8–21–401 revealed its sponsor's intention that court costs be paid in advance, eliminating the need for a cost bond. *Id.* at \*18. Indeed, the majority stated that the bill sponsor and Judicial Council representatives had indicated that "the standardized amount of court costs was intended to be essentially inclusive of all costs to be charged in the litigation." *Id.* (footnote omitted). Thus, the *Bernatsky* majority concluded that "payment of the dollar amount in 'standard court cost' listed in Section 8–21–401(b)(1)(C)(i) at the time an appeal from General Sessions Court to Circuit Court is instituted fulfills the Section 27–5–103 appeal-bond requirement." *Id.* at \*19.[2]

At the outset, I simply cannot agree with the conclusion that any portion of section 27–5–103 is ambiguous. This "ambiguity" issue was specifically raised and specifically rejected in the recent *Jacob* decision. Section 27–5–103 provides:

> (a) Before the appeal is granted, the person appealing shall give bond with good security, as hereinafter provided, for the costs of the appeal, or take the oath for poor persons.
>
> (b) An appeal bond filed by a plaintiff or defendant pursuant to this chapter shall be considered sufficient if it secures the cost of the cause on appeal.

As aptly explained in Judge Stafford's concurrence in Bernatsky:

> [T]he majority concludes that the statute "lacks precision" in that the phrase "as hereinafter provided" may refer to another statute to establish the costs of the appeal, specifically the later-enacted Tennessee Code Annotated Section 8–21–401. However, the later enactment of subsection (b) is not relevant to the inquiry of whether Tennessee Code Annotated Section 27–5–103 is ambiguous. Courts must only consider the statutory text in determining whether an ambiguity exists. *See Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 694 (Tenn. 2011). Only if a statute is determined to be ambiguous may

---

[2] The majority cites this section of the code in FN3 dealing with "standard court cost," but neither this section nor *any other part* of this statute changes, modifies or annuls the jurisdictional requirement of T.C.A. § 27-5-103, which governs the perfection of appeals from general sessions to circuit court and requires a "bond with good security . . . [to] secure [ ] the cost of the cause on appeal." Because payment of the standard court cost does not secure the cost of the appeal, clearly, section 27-5-103 requires something beyond the payment provided by section 8-21-401.

the court then "consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute, the background and purpose of the statute, and the entire statutory scheme. *Mills v. Fulmarque, Inc* ., 360 S.W.3d 362, 368 (Tenn. 2012) (citing *Lee Med., Inc.*, 312 S.W.3d at 527–28) (emphasis added). Thus, consideration of matters such as "historical facts preceding or contemporaneous with the enactment of the statute being construed ... [and] earlier versions of the statute" is only permitted once the statute is determined to be ambiguous. Am.Jur.2d Statutes § 64 n. 5 (citing *Lee Med., Inc.*, 312 S.W.3d at 527–28). However, "these non-codified external sources cannot provide a basis for departing from clear codified statutory provisions." *Mills*, 360 S.W.3d at 368. Disregarding the historical context of the amendment to Tennessee Code Annotated Section 27–5–103 and considering only the current statutory text, as I must at this stage in the analysis, I cannot conclude that there is an ambiguity in the statute at issue.

To hold that the simple phrase "as hereinafter provided" alone causes an ambiguity creates a forced interpretation at odds with the established rules of statutory construction. *See Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000) (holding that a court's job in interpreting a statute is to ascertain the intention of the legislature without employing a "forced or subtle interpretation that would limit or extend the statute's application"). Indeed, the Tennessee Supreme Court has held that "it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning." *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503 (Tenn. 2004). In this case, the majority seeks to find an ambiguity in the isolated phrase "as hereinafter provided," while ignoring the fact that the most natural interpretation of the statute's text requires us to hold that the "as hereinafter provided" language clearly refers to the following subsection of the statute.

*Bernatsky*, 2013 WL 593911, at *16; *Bernatsky*, 2013 WL 593911, at *24 (J. Stafford, concurring and seemingly partially dissenting).

Moreover, I cannot agree with the *Bernatsky* Court's finding that the phrase "costs of the appeal" renders section 27–5–103 ambiguous. In finding such ambiguity, the *Bernatsky* Court focused upon subsection (a)'s "costs of the appeal" without looking to subsection (b) for further clarification of the phrase. Read together, subsections (a) and (b) require that an appellant give "[a]n appeal bond" "with good security" to "secure[ ] the cost of the cause on appeal." Thus, the statute does not simply require that some unspecified "costs" be secured; it specifically requires that those "costs" secure the "cost of the cause on appeal." It is

elementary that a payment to commence an appeal-whether termed a "fee," a "cost," or a "bond" does not provide security for the "cost of the cause "—the "cause," of course, being the appeal. Thus, the plain language of section 27–5–103 requires a litigant appealing from a judgment in the general sessions court to file a bond for all of the costs of the appeal. The plain language of the statute does not place a monetary limit on the appeal bond. Because the costs of the appeal are unknown at the time of commencing the appeal, the statute clearly requires a bond in an undetermined amount. Therefore, by its plain language, the statute requires a bond for all the costs of the litigation in order to successfully perfect an appeal from the general sessions court.

In the absence of ambiguities within section 27–5–103, its legislative history may not properly be considered. *See Keen v. State*, —— S.W.3d ————, 2012 WL 6631245, at *12 (Tenn. 2012) (citations omitted) ("If the statutory language is clear and unambiguous, we apply the statute's plain language in its normal and accepted use. We need look no further than the statute itself, enforcing it just as it is written."). In any event, the legislative history of section 27–5–103 cited by the *Bernatsky* majority, is, in my opinion, less than compelling.

As was acknowledged by the *Bernatsky* majority, the 1988 amendment to section 27–5–103 was a legislative response to a decision by this Court to require a bond for the amount of the judgment[3]—an entirely different issue from that presented in *Bernatsky* and in the instant case. Moreover, the legislators apparently expressed concern regarding the "working poor's" potential inability to secure a bond for the amount of the judgment—as opposed to the amount of courts costs incurred throughout the appeal. The legislators' reasoning does not pour over as easily as the *Bernatsky* Court suggests. The requirement that a litigant secure a bond to cover all court costs incurred throughout the appeal—necessarily excluding the judgment amount—requires only a bond for a not-yet-known amount. It does not require an "unlimited" bond. A bonding company could easily issue a bond "securing all court costs"—the exact amount of which is unknown until the case is resolved.

Moreover, I find less-than-compelling the *Bernatsky* majority's reliance upon perceived legislative "acquiescence" in light of case law referencing payment of a sum certain. In *City of Red Boiling Springs v. Whitley*, 777 S.W.2d 706 (Tenn. Ct. App. 1989), cited by the *Bernatsky* majority, a city court defendant erroneously paid a $250.00 fee to the circuit court clerk -as opposed to the city court clerk—to appeal his case. On appeal, this Court held that

---

[3] The *Bernatsky* majority states that the legislature did not "indicate any intent to disturb the *Maddock* Court's holding that an appeal bond for costs in 'the minimum amount of $250' was sufficient under the statute to secure 'the costs of the appeal'" *Bernatsky*, 2013 WL 593911, at *8. However, the *Maddock* Court clearly envisioned that appealing plaintiffs would not simply file a $250 fee, as it stated that a defendant subject to a non-prosecuting plaintiff/appellant would be entitled to dismissal of the appeal and a judgment against the plaintiff " and his sureties on the appeal bond for costs." *Maddock*, 1986 WL 8811, at *2 (emphasis added).

-6-

filing the bond in the wrong court did not warrant dismissal; however, it found the appeal had not been perfected because the bond lacked a surety. *Id.* at 708. The Court, referencing section 27–5–103, stated, "We know of no case that says an appeal bond without a surety filed in the circuit court substantially complies with the statutory provisions governing appeals from inferior courts." *Id.*; *see also City of Maryville v. Scholem*, No. 03A01–9111–CV–401, 1992 WL 62007, at *2 (Tenn. Ct. App. E.S. Mar. 31, 1992) *perm. app. denied* (Tenn. Aug. 24, 1992) ("In the Red Boiling Springs case, the court found the appellant failed to properly perfect his appeal because he had no surety on the appeal bond as required by the statute."). Although the *Bernatsky* majority is correct that *City of Red Boiling Springs* refers to the payment of the $250 fee as a "bond," it nonetheless finds such is deficient unless a surety is included. Thus, *City of Red Boiling Springs* stands for the proposition that some type of bond beyond a fee payment is required-precisely what a different panel of this Court held in *Jacob v. Partee*. *See also Tejwani v. Trammell,* No. 02A01–9103–CV–00036, 1991 WL 136224, at *2 (Tenn. Ct. App. W.S. July 26, 1991) (mentioning a $250 sum, but requiring a surety). Simply put, I am more than skeptical that the cases relied upon by the *Bernatksy* majority—which mostly relate to other issues—in fact, support its contention that the legislature has acquiesced to mere payment of an initial filing fee.

However, I find it curious that the majority would rely so heavily upon purported legislative acquiescence, while all but ignoring our Supreme Court's recent implicit affirmance of our holding in *Jacob* which addressed the exact issues raised in *Bernatsky* and now in the instant case. *See Rose Const. Co., Inc. v. Raintree Dev. Co., LLC*, No. W2003–01845–COA–R3–CV, 2004 WL 2607766, at *2 (Tenn. Ct. App. Nov. 16, 2004) perm. app. denied (Tenn. May 9, 2004) (stating that a decision was "implicitly affirmed" when the Supreme Court denied application for permission to appeal).[4]

Finally, I disagree with the Bernatsky majority's reliance upon Tennessee Code Annotated section 8–21–401. As previously stated, 27–5–103 unambiguously requires a bond covering all appeal costs. Therefore, it is unnecessary to consider section 8–21–401 to determine the sum sufficient to satisfy the requirements of section 27–5–103. In any event, I would note that section 8–21–401 is clear on its face; it explicitly declares that the "[i]f a party ... pays costs at the time the services are requested, such payment shall be deemed to satisfy the requirement for security to be given for costs, pursuant to § 20–12–120." (emphasis added). Section 20–12–120 is not the cost bond requirement of Section 27–5–103. Applying the canon of construction "expressio unius est exclusio alterius," which holds that the expression

---

[4]To the same effect as *Jacob v. Partee*, see Atty. Gen. Op., No. 12–23, 2012 WL 682072, at *2 (Feb. 23, 2012). Neither the Attorney General nor the Supreme Court, in denying permission to appeal in *Jacob v. Partee*, noted any ambiguity in the statute.

of one thing implies the exclusion of others, the Court should infer that had the legislature intended for payment of section 8–21–401 costs to satisfy the requirements of section 27–5–103, it would have included specific language to that effect. *See Rich v. Tenn. Bd. of Med. Exam.*, 350 S.W.3d 919, 927 (Tenn. 2011).

Moreover, without a finding of ambiguity within section 8–21–401, the *Bernatsky* Court clearly lacked the authority to consider the statute's legislative history.[5] No matter what the bill sponsor or a representative of the Judicial Council—who is not a member of the General Assembly—may have said at the time of the statute's enactment, the legislature did not enact a statute in which payment of the sums contemplated in section 8–21–401 were deemed to satisfy the requirements of section 27–5–103. In holding this, the *Bernatsky* Court departed from the express language found in section 8–21–401.

Additionally, assuming that section 8–21–401's legislative history could be properly considered, the history does not fully support the *Bernatksy* Court's conclusions. According to the Court, the 2005 amendment to section 8–21–401 was conceived, in part, to address the problem of lost court costs revenue. In light of this purported mission, it is doubtful that the legislature would eliminate the appeal bond requirement, and simply allow upfront payment of the litigation commencement fee.

As expressed in *Jacob*, I believe that section 27–5–103 unambiguously requires an appeal bond which secures all costs incurred throughout the appeal, as opposed to payment of an initial appeal filing fee. Accordingly, I cannot subscribe to the conclusions reached in *Bernatsky* which underlie the majority's conclusion that the trial court erred in dismissing the instant case for lack of subject matter jurisdiction. However, because I believe that the case warranted dismissal for lack of subject matter jurisdiction, I concur in the result reached in this case.

_____

ALAN E. HIGHERS, P.J., W.S.

---

[5]The *Bernatsky* court purportedly found an ambiguity in section 27–5–103. Section 8–21–401 is a separate statute entirely, found in a different title of the Code.