# IN THE SUPREME COURT OF TENNESSEE
# AT KNOXVILLE

May 30, 2013 Session Heard at Nashville[1]

## WESTGATE SMOKY MOUNTAINS AT GATLINBURG v. BURNS PHILLIPS, COMMISSIONER, TENNESSEE DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT ET AL.

**Appeal by Permission from the Court of Appeals, Eastern Section
Chancery Court for Sevier County
No. 1011462     Telford E. Forgety, Chancellor**

---

**No. E2011-02538-SC-R11-CV - Filed December 23, 2013**

---

The claimant is a licensed time-share salesperson who sold time-share interests at a resort owned by Westgate in Gatlinburg, Tennessee. When resort management terminated the business relationship, the claimant filed for state unemployment benefits with the Department of Labor and Workforce Development. The initial agency decision, the Appeals Tribunal, and the Board of Review affirmed an award of benefits to the claimant, concluding that a time-share salesperson is not a licensed real estate agent and therefore is not subject to the Tennessee Employment Security Law's exclusion for services performed by a "qualified real estate agent." Westgate sought judicial review of the Board's decision. The chancery court reversed, finding that a time-share salesperson is a "licensed real estate agent" and that the claimant was ineligible for unemployment benefits as a "qualified real estate agent." The Court of Appeals reversed the chancery court's findings, and Westgate appealed. We reverse the Court of Appeals and reinstate the judgment of the chancery court.

**Tenn. R. App. P. 11;
Judgment of the Court of Appeals Reversed; Case Remanded**

JANICE M. HOLDER, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., and CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Gregory C. Logue and J. Keith Coates, Jr., Knoxville, Tennessee, for the appellant, Westgate Smoky Mountains at Gatlinburg.

---

[1] Oral argument was heard in this case on May 30, 2013, at Lipscomb University in Nashville, Tennessee, as part of this Court's S.C.A.L.E.S. (Supreme Court Advancing Legal Education for Students) project.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Derek C. Jumper, Assistant Attorney General; Joseph F. Whalen, Associate Solicitor General; for the appellee, Burns Phillips, Commissioner, Tennessee Department of Labor and Workforce Development.

Gregory F. Coleman and Mark E. Silvey, Knoxville, Tennessee, for the appellee, Cynthia L. Vukich-Daw.

**OPINION**

I. Facts and Procedural History

Cynthia L. Vukich-Daw sold time-share interests at Westgate Smoky Mountains at Gatlinburg under an independent contractor agreement executed on June 4, 2003. The agreement provided that Ms. Vukich-Daw would be paid on a commission basis and would be responsible for her own income and payroll taxes. On November 7, 2009, Westgate terminated the business relationship. On November 12, 2009, Ms. Vukich-Daw filed a claim for unemployment compensation with the Department of Labor and Workforce Development.

In considering Ms. Vukich-Daw's claim for unemployment benefits, the Department of Labor questioned whether the "qualified real estate agent" exclusion in Tennessee Code Annotated section 50-7-207(c)(11) (2008 & Supp. 2013) precluded Ms. Vukich-Daw from receiving unemployment benefits for the services that she performed as a licensed time-share salesperson for Westgate. The tax auditor who conducted the Department of Labor's investigation determined that the differences between a time-share salesperson's license and a broker or an affiliate broker's license entitled Ms. Vukich-Daw to unemployment compensation benefits. In its December 9, 2009 agency decision letter, the Department of Labor concluded that section 50-7-207(c)(11)'s exclusion for qualified real estate agents did not apply to Ms. Vukich-Daw and that her services therefore fell within the definition of employment under the Tennessee Employment Security Law ("Employment Security Law").[2] As a result, the Department of Labor awarded unemployment benefits to Ms. Vukich-Daw and imposed unemployment tax liability on Westgate.

Westgate appealed to the Appeals Tribunal. Following a hearing, the Appeals Tribunal issued a written decision on March 31, 2010. The Appeals Tribunal did not address

---

[2] Although the Department initially concluded that a time-share salesperson is not a licensed real estate agent under the Employment Security Law, the Department reversed its position in its brief filed in this Court.

the applicability of the qualified real estate agent exclusion. Instead, the hearing officer determined that Westgate treated Ms. Vukich-Daw as an employee rather than as an independent contractor and affirmed the Department of Labor's award of unemployment benefits.

Westgate timely appealed to the Board of Review. Relying on the record, the Board of Review affirmed the Appeals Tribunal's determination that Westgate treated Ms. Vukich-Daw as an employee. The Board of Review noted, however, that the Appeals Tribunal failed to address "the more vigorously contested issue" of whether Ms. Vukich-Daw's services fell within the qualified real estate agent exclusion. The Board of Review concluded that the exclusion was inapplicable to Ms. Vukich-Daw because she was not a licensed real estate agent.

On November 9, 2010, Westgate filed a petition in the Chancery Court for Sevier County, seeking judicial review of the Board of Review's decision. The chancery court heard no additional testimony but considered arguments from counsel. The chancery court determined that the dispositive issue was whether a time-share salesperson is a "licensed real estate agent" who falls within the category of excluded services performed by a qualified real estate agent. See Tenn. Code Ann. § 50-7-207(c)(11). The chancery court concluded that time-share salespersons are licensed real estate agents and that Ms. Vukich-Daw met the elements of the "qualified real estate agent" exclusion because she

> (1) was a licensed Time-Share Salesperson as established by the Tennessee Real Estate Commission during the relevant time period; (2) was paid on a commission directly related to her sales production and not on the number of hours she worked; and (3) performed services for [Westgate] pursuant to a written contract which specifically stated that she was not Petitioner's employee and that she would be responsible for paying all of her own Federal income taxes.

The chancery court therefore concluded that the Board of Review's finding that a time-share salesperson is not a licensed real estate agent is clearly erroneous as a matter of law because it is contrary to Tennessee Code Annotated sections 50-7-207(c)(11) and 62-13-101 to -604 (2009 & Supp. 2013).[3]

---

[3] Tennessee Code Annotated sections 50-7-304(i)(2)-(3) (2008 & Supp. 2013) provides that

The Chancellor may affirm the decision of the board or the Chancellor may reverse, remand, or modify the decision if the rights of the petitioner have been prejudiced because the

(continued...)

Ms. Vukich-Daw appealed. The Court of Appeals reversed, concluding that time-share salespersons are not licensed real estate agents and therefore cannot fall within section 50-7-207(c)(11)'s exclusion for qualified real estate agents. Westgate Resorts v. Neeley, No. E2011-02538-COA-R3-CV, 2012 WL 3144918, at *1 (Tenn. Ct. App. Aug. 3, 2012). We granted Westgate permission to appeal.

## II. Analysis

The facts in this case are undisputed. We are presented, therefore, with a question of law, which we review de novo with no presumption of correctness. See Tenn. R. App. P. 13(d); Wallace v. Sullivan, 561 S.W.2d 452, 453 (Tenn. 1978) (recognizing that the Board of Review's conclusions of law are subject to de novo review with no presumption of correctness).

In Tennessee, a worker's eligibility for unemployment benefits and the corresponding unemployment tax liability of a purported employer depend on whether the worker's services meet the statutory definition of "employment." A service constitutes "employment" only if each of the following three conditions is satisfied:

(1)     It is within any category of "included service" as listed in subsection (b);

(2)     It is not within any category of "excluded service" as listed in subsection (c); and

---

[3] (...continued)
administrative findings, inferences, conclusions or decisions are:
(A)     In violation of constitutional or statutory provisions;
(B)     In excess of the statutory authority of the agency;
(C)     Made upon unlawful procedure;
(D)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(E)     Unsupported by evidence which is both substantial and material in the light of the entire record.
(3)     In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact. No decision of the board shall be reversed, remanded, or modified by the chancellor unless for errors which affect the merits of the final decision of the board. Such petition for judicial review shall be heard by the chancellor either at term time or vacation as a matter of right; any other statute of this state to the contrary notwithstanding.

(3)     It is within any category of "Tennessee service" as listed in subsection (d).

Tenn. Code Ann. § 50-7-207(a)(1)-(3) (2008 & Supp. 2013).

The parties agree that if Ms. Vukich-Daw's services as a time-share salesperson fall "within any category of 'excluded service'" under subsection (2), she does not meet the definition of employment and is therefore ineligible to receive unemployment benefits. Id.

Qualified Real Estate Agent Exclusion

The Employment Security Law excludes the services of a qualified real estate agent. A person is a qualified real estate agent if:

(A)     The individual is a licensed real estate agent;

(B)     Substantially all of the remuneration for the services performed as a real estate agent is directly related to sales or other output, including the performance of services, rather than the number of hours worked; and

(C)     The services performed by the individual are performed pursuant to a written contract between the individual and the person for whom the services are performed, and the contract provides that the individual will not be treated as an employee with respect to the services for federal tax (FUTA) purposes.

Tenn. Code Ann. § 50-7-207(c)(11)(A)-(C).

This exclusion was added to our Employment Security Law in 1987 to conform with the Internal Revenue Code. See Tenn. Code Ann. §§ 50-7-102(b), -104(b) (2008) (indicating that the Employment Security Law is to be construed in pari materia with the Internal Revenue Code, Federal Unemployment Tax Act). In fact, our exclusion closely tracks the language of the "qualified real estate agent" exclusion of the Internal Revenue Code, which provides that:

The term 'qualified real estate agent' means any individual who is a sales person if – (A) such individual is a licensed real estate agent, (B) substantially all of the remuneration (whether or not paid in cash) for the services performed by such individual as a real estate agent is directly related to sales or other output (including the performance of services) rather than to the number of hours worked, and (C) the services performed by the individual are performed pursuant to a written contract between such individual and the person for

whom the services are performed and such contract provides that the individual will not be treated as an employee with respect to such services for Federal tax purposes.

26 U.S.C. § 3508(b)(1)(A)-(C) (West 2013). Section 3508 further provides that "in the case of services performed as a qualified real estate agent . . . (1) the individual performing the services shall not be treated as an employee; and (2) the person for whom such services are performed shall not be treated as an employer." 26 U.S.C. § 3508(a)(1)-(2). Congress enacted section 3508 in 1986 to respond to increased federal employment "'tax status controversies,'" and "to provide 'a statutory scheme for assuring the status of . . . real estate sales people as independent contractors . . . .'" Smoky Mountain Secrets, Inc. v. United States, 910 F. Supp. 1316, 1321 (E.D. Tenn. 1995) (referring to qualified real estate agents as statutory non-employees).

Consistent with the Internal Revenue Code, a qualified real estate agent under Tennessee Code Annotated section 50-7-207(c)(11) is a statutory non-employee who is not entitled to unemployment benefits. We now consider whether Ms. Vukich-Daw's services as a time-share salesperson satisfy the exclusion's three criteria.

A. Licensed Real Estate Agent

Tennessee Code Annotated section 50-7-207(c)(11)(A) requires us to first determine whether a time-share salesperson is a "licensed real estate agent." When we interpret a statute, we must ascertain and give full effect to the General Assembly's intent. Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 309 (Tenn. 2008). Our primary concern is to carry out this intent without unduly expanding or restricting the language of the statute beyond the legislature's intended scope. Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc., 978 S.W.2d 91, 93 (Tenn. 1998). Furthermore, "[w]e presume that every word in a statute has meaning and purpose and should be given full effect if so doing does not violate the legislature's obvious intent." State v. Casper, 297 S.W.3d 676, 683 (Tenn. 2009).

When the statutory language is clear and unambiguous, we apply the plain meaning of the statute. Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004). When the language is ambiguous, however, we look to the "broader statutory scheme, the history of the legislation, or other sources to discern its meaning." Casper, 297 S.W.3d at 683. In doing so, we must also presume that the General Assembly was aware of the state of the law at the time it enacted the statute at issue. Id. Finally, statutes relating to the same subject or having a common purpose should be construed together. Graham v. Caples, 325 S.W.3d 578, 582 (Tenn. 2010) (internal quotation marks omitted).

In adding the qualified real estate agent exclusion to the Employment Security Law in 1987, the General Assembly adopted the term "licensed real estate agent" from section 3508 of the Internal Revenue Code. See 26 U.S.C. § 3508(b)(1)(A). The term "licensed real estate agent," however, is not defined in section 3508 of the Internal Revenue Code, in Tennessee Code Annotated section 50-7-207(c)(11), or elsewhere in the Employment Security Law. Moreover, the Employment Security Law is administered by the Department of Labor, which does not license real estate agents or determine their qualifications. We must therefore look beyond the Employment Security Law to determine the meaning of "licensed real estate agent."

In Tennessee, individuals who engage in real estate activities are governed by the Tennessee Real Estate Broker License Act of 1973 ("Real Estate Broker Act"), which is administered by the Tennessee Real Estate Commission. Act of Apr. 26, 1973, ch. 181, 1973 Tenn. Pub. Acts 524 (codified as amended at Tenn. Code Ann. §§ 62-13-101 to -604 (2009 & Supp. 2013)). The Real Estate Broker Act has historically referred to individuals engaging in real estate activities as "brokers" and "affiliate brokers" and not as "real estate agents." Id. It is clear, however, that the General Assembly intended to exclude a category of services from the Employment Security Law when it enacted the "qualified real estate agent" exclusion. To determine which category of services the General Assembly intended to exclude, we find it helpful to review the history of the Real Estate Broker Act and to examine the emergence of time-share intervals in real estate activities.

When enacted in 1973, the Real Estate Broker Act defined a "broker" in pertinent part as

> any person who for a fee, commission, finders fee or any other valuable consideration, or with the intent or expectation of receiving the same from another, solicits, negotiates or attempts to solicit or negotiate the listing, sale, purchase, exchange, lease or option to buy, sell, rent, or exchange for any real estate or of the improvements thereon . . . .

Id. at 525. An "affiliate broker" was defined as "any person engaged under contract by or on behalf of a licensed broker to participate in any activity included [within the definition of "broker."]. Id. at 526. "Real estate" included leaseholds and "any other interest or estate in land." Id. at 525. The Real Estate Broker Act required any person who engaged in the real estate activities defined in the Act to be licensed by the Tennessee Real Estate Commission as a broker or an affiliate broker. Id. at 524-25. At that time, however, time-share intervals were not a regulated real estate activity under the Act.

In 1981, however, the Real Estate Broker Act was amended to add time-share transactions to the real estate activities conducted by licensed brokers and affiliate brokers. Act of May 6, 1981, ch. 372, 1981 Tenn. Pub. Acts 514, 529. The amendment of the Real Estate Broker Act coincided with the enactment of the Tennessee Time-Share Act of 1981 ("Time-Share Act"). Id. at 514 (codified as amended at Tenn. Code Ann. §§ 66-32-101 to -312 (2004)). The Time-Share Act created time-share "sales agents" who were authorized to sell time-share intervals and time-share estates as defined in the Time-Share Act.[4] Id. at 516. In 1983, the Time-Share Act was amended to specify that all time-share sales agents were required to be licensed under, and subject to, the Real Estate Broker Act. Act of Apr. 26, 1983, ch. 210, 1983 Tenn. Pub. Acts 337 (amending Tenn. Code Ann. § 66-32-102(1982)). The Time-Share Act also authorized the Real Estate Commission to revoke or suspend "the real estate license of a [time-share] sales agent." Act of Mar. 21, 1985, ch. 98, 1985 Tenn. Pub. Acts 142, 144. This series of enactments during the 1980s placed time-share intervals within real estate activity and required those engaged in time-share transactions to hold a license from the Real Estate Commission.

The General Assembly amended the Real Estate Broker Act in 1989 to add a third license category for "time-share salesperson[s]." See Act of Mar. 27, 1989, ch. 89, 1989 Tenn. Pub. Acts 121. As amended, the Real Estate Broker Act defined a time-share salesperson as "any person acting as a seller of any time-share interval under contract with or control of a licensed real estate broker pursuant to a registered time-share program." Id. at 121. See also Tenn. Code Ann. § 62-13-102(15) (providing that licensed brokers and affiliate brokers are also entitled to sell time-share intervals). The General Assembly's creation of this new license category and its alignment of time-share salespersons with brokers and affiliate brokers in the Real Estate Broker Act further reflect the legislative intent to treat those individuals who engage in time-share transactions similarly to those conducting broader real estate transactions.

We can conclude from the historical interrelationship of the Real Estate Broker Act and the Time-Share Act that the General Assembly views time-share salespersons and affiliate brokers similarly with respect to the Employment Security Law exclusion. Both categories of individuals must be licensed by the Real Estate Commission, must perform their

_____

[4] The 1981 Act defined "Time-Share Intervals" as a "Time-Share Estate or a Time-Share Use." 1981 Tenn. Pub. Acts 516. "Time-Share Estate" was described as "an ownership or leasehold estate in property devoted to a time-share fee (tenants in common, time span ownership, interval ownership) and a time-share lease." Id. "Time-Share Use" was defined as "any contractual right of exclusive occupancy which does not fall within the definition of a 'Time-Share Estate' including, without limitation, a vacation license, prepaid hotel reservation, club membership, limited partnership or vacation bond." Id.

services under the control of a broker who actively supervises and trains them, and must meet their respective educational and training requirements.

We may also presume that the General Assembly was aware of the qualified real estate agent exclusion when it amended the Real Estate Broker Act in 1989 to include a separate licensing category for time-share salespersons. See Casper, 297 S.W.3d at 683. Based on the legislative history of the Real Estate Broker Act and the Time-Share Act, we conclude that a time-share salesperson is a "licensed real estate agent," as that term appears in Tennessee Code Annotated section 50-7-207(c)(11)(A). See Nev. Emp't Sec. Dep't. v. Capri Resorts, Inc., 763 P.2d 50, 52 (Nev. 1988) (examining Nevada's substantially similar exclusion and concluding that "the activities of time-share sales agents are clearly analogous to those of licensed real estate salespersons, and are thus exempt from the definition of 'employment.'").

The Board of Review acknowledged that Ms. Vukich-Daw was licensed by the Tennessee Real Estate Commission but rejected the argument that time-share salespersons are "licensed real estate agents" as defined by the exclusion because time-share salespersons have limited licenses and relaxed licensing requirements when compared to brokers and affiliate brokers. In our view, however, these perceived differences provide no meaningful distinction between time-share salespersons and affiliate brokers. Although time-share intervals are a specialized subset within the real estate market, time-share interests fall within the statutory definition of real estate. Additionally, brokers, affiliate brokers, and time-share salespersons must be licensed by the Real Estate Commission to engage in the real estate business. In determining the scope of the qualified real estate agent exclusion, we find no reason to distinguish these three categories simply because the licensing requirements are not identical. Ms. Vukich-Daw is a licensed real estate agent and therefore satisfies the first criterion of the qualified real estate agent exclusion.

## B. Paid on Commission

Tennessee Code Annotated section 50-7-207(c)(11)(B) requires that substantially all of the payment for the services performed by the real estate agent be based on sales or other output rather than on the number of hours worked. The parties do not dispute that Ms. Vukich-Daw was paid purely on a commission basis. Although she received a daily draw as an advance against her anticipated earned commission, her salary was not tied to the number of hours she worked in a given day, week, or month. Accordingly, the criterion of subsection 50-7-207(c)(11)(B) has been satisfied.

## C. Services Performed Under a Written Contract

Finally, Tennessee Code Annotated section 50-7-207(c)(11)(C) requires a real estate agent's services to be "performed pursuant to a written contract between the individual and the person for whom the services are performed, and the contract provides that the individual will not be treated as an employee with respect to the services for federal tax (FUTA) purposes."

The record shows that Ms. Vukich-Daw entered into a written agreement to perform services as a time-share salesperson. The document was entitled "Independent Contractor Agreement New and Existing Commissioned Sales Agents" and provided that the independent contractor was being retained to sell interval ownership interests to prospective purchasers. The agreement further provided that the independent contractor would be compensated in the manner specified in Exhibit "A." The document attached to the agreement is entitled "Affidavit" and contains the following attestations:

1.  I have paid all of my own license fees and membership dues.
2.  I am responsible for my own automobile and transportation expense, including insurance, without receiving any remuneration from the Broker.
3.  I have paid all entertainment expenses or other expenses, incidental in obtaining or selling [sic] clients without receiving any reimbursement.
4.  I have not been required by the Broker to maintain any specific schedule or attend any mandatory sales meetings, nor am I required to follow special procedures.
5.  I may work as I see fir [sic], or not work if I choose. I am not obligated to have set office or working hours.
6.  I may schedule vacations as I please and be off work as I see fit.
7.  I have not been required to meet any sales quotas.
8.  I have not received no [sic] minimum salary, sick pay or other fringe benefits.
9.  I do not receive instructions from the Broker as to which customers or property I am to sell.
10. I pay my own income and FICA taxes.
11. I am not required to file reports with the Broker concerning my business conduct or status of sale.
12. My association with the Broker may be terminated by wither [sic] party at any time, upon notice given to the other, but the right of the party to any fees accrued prior to said notice shall now be divested by the termination of this agreement.

/s/ Cynthia Vukich Daw

Ms. Vukich-Daw does not dispute that she executed the agreement and the attached Affidavit. Ms. Vukich-Daw also acknowledges that she received an IRS 1099 Form each year and was responsible for her own payroll taxes. We therefore conclude that these documents satisfy Tennessee Code Annotated section 50-7-207(c)(11)(C).

Ms. Vukich-Daw maintains, however, that even if she satisfies section 50-7-207(c)(11)(C), this Court must nonetheless examine the validity of her agreement and determine, as did the Appeals Tribunal, whether Westgate treated her as an independent contractor or as an employee. We disagree.

The Appeals Tribunal conducted both the common law and statutory tests for determining when a worker is an independent contractor or an employee. Both tests are referenced in the Employment Security Law. See Tenn. Code Ann. § 50-7-207(b)(2)(B) (indicating that an "included service" under section 207(a)(1) encompasses an individual who has the status of an employee "under the usual common-law rules applicable in determining the employer/employee relationship") and Tenn. Code Ann. § 50-7-207(e)(A)-(C) (enumerating the elements of the statutory test for independent contractors, which is commonly referred to as the "ABC" test).[5] These tests, however, are applied when determining whether the services are an "included service" under section 50-7-207(a)(1) and when the worker's status as an employee or an independent contractor is relevant in making that determination.[6] When a worker meets the criteria for any category of "excluded service"

---

[5] Tennessee Code Annotated sections 50-7-207(e)(1)(A)-(C) provides that:

Service performed by an individual shall be deemed to be an included service for the purposes of this section regardless of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the administrator that: (A) The individual has been and will continue to be free from control and direction in connection with the performance of the service, both under any contract for the performance of service and in fact; (B) The service is performed either outside the usual course of business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and (C) The individual is customarily engaged in an independently established trade, occupation, profession or business of that same nature as that involved in the service performed.

[6] The Appeals Tribunal employed the common law and statutory tests and concluded that Ms. Vukich-Daw was treated as an employee rather than an independent contractor and that she therefore performed an "included service" under section 50-7-207(a)(1). In doing so, the Appeals Tribunal determined that Ms. Vukich-Daw's services did not fall within any category of "excluded service" under section
(continued...)

-11-

under the Employment Security Law, the worker is considered a statutory non-employee, and any further inquiry is therefore irrelevant. To subject an excluded category of services to this second tier of scrutiny would render the exclusion meaningless.

In this case, we have examined the findings of the administrative tribunals, the chancery court, and the Court of Appeals. We must ultimately decide, however, if the Board of Review's findings were based on an incorrect interpretation and application of Tennessee Code Annotated section 50-7-207(c)(11). Because we have determined that a time-share salesperson is a licensed real estate agent under section 50-7-207(c)(11)(A), we must conclude that the Board's decision to the contrary was in error. We further conclude that the administrative tribunals' factual findings and legal conclusions relating to the application of the common law or statutory tests for determining whether a worker is an employee or an independent contractor are irrelevant and have no bearing on our determination of the applicability of Tennessee Code Annotated section 50-7-207(c)(11).

## III. Conclusion

We conclude that a time-share salesperson is a licensed real estate agent within the Employment Security Law's "qualified real estate agent" exclusion. We further conclude that Ms. Vukich-Daw satisfied the exclusion's criteria and therefore is a qualified real estate agent. As a result, Ms. Vukich-Daw's services do not meet the Employment Security Law's definition of employment, and Ms. Vukich-Daw is ineligible to receive unemployment compensation benefits. We therefore reverse the judgment of the Court of Appeals and reinstate the judgment of the chancery court. The costs of this appeal are taxed to Ms. Vukich-Daw for which execution may issue if necessary.

JANICE M. HOLDER, JUSTICE

---

[6] (...continued)
50-7-207(a)(2). Because "employment" within the Employment Security Law requires that all three conditions be satisfied, our finding that Ms. Vukich-Daw performed excluded services as a "qualified real estate agent" is dispositive.