IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 22, 2023 Session

IN RE ZAYDA C.[1]

**Appeal from the Juvenile Court for Blount County**
**No. JV-2679          Kenlyn Foster, Judge**

_____

**No. E2022-01483-COA-R3-PT**

_____

This action involves the termination of a father's parental rights to his child. Following a bench trial, the court found that clear and convincing evidence existed to establish the following statutory grounds of termination: (1) abandonment by wanton disregard; (2) incarceration for a period of ten or more years; and (3) the persistence of conditions which led to removal. The court also found that termination was in the best interest of the child. We affirm the trial court's ultimate termination decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed in Part, Reversed in Part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. Michael Swiney, C.J. and Thomas R. Frierson, II, J., joined.

Sherif Guindi, Knoxville, Tennessee, for the appellant, Timothy C.

Jonathan Skrmetti, Attorney General & Reporter, and Clifton Wade Barnett, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**I.      BACKGROUND**

Zayda C. ("the Child") was born out-of-wedlock to Danielle M. ("Mother") and Timothy C. ("Father") in January 2011.[2] Father's name was placed on the Child's birth certificate, which was issued on January 14, 2011. Following her birth, the Child lived

---

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

[2] Mother voluntarily surrendered her parental rights and is not a party to this appeal.

with Mother and visited Father on occasion with Mother's permission. Father was arrested on January 4, 2018, and was incarcerated.

In March 2020, the Tennessee Department of Children's Services ("DCS") removed the Child and her half-sister ("Ivy") from Mother based upon an emergency protective order. Father was still incarcerated at the time of removal and has remained incarcerated throughout this custodial episode.

The Child and Ivy were placed together in a foster home, where they have remained since the time of removal. The Child was later adjudicated as dependent and neglected. DCS moved to terminate Father's parental rights on April 21, 2021, alleging abandonment based upon wanton disregard, incarceration for a period of ten or more years, and the persistence of conditions which led to removal.

The case proceeded to a hearing on October 10, 2022. Father testified that he has been incarcerated since 2018, based upon a 10-year sentence for the Sale and Delivery of a Schedule II drug to be served in the Tennessee Department of Correction ("TDOC") and a 6-year sentence imposed consecutively for the promotion of the manufacturing of methamphetamine, for a total effective sentence of 16 years to be served in the TDOC. Father stated that he was due for release in three to four months. He explained that he completed his ten-year sentence and was now nearing completion of his consecutive six-year sentence. He planned to attend a three-month program at a halfway house in Knoxville upon his release to ready himself for the Child's return. He asserted that he was willing to care for both the Child and Ivy, if permitted, but that, at the very least, he would encourage a relationship between them if he could not assume custody of both children. He agreed that the children could not live with him at the halfway home.

Father claimed that he enjoyed a strong relationship with the Child. He stated that his relationship with Mother ended in 2011 but that she allowed him to spend time with the Child. He asserted that once incarcerated, he spoke with the Child on the telephone two to three times per week from his facility prior to the Child's removal. He claimed that he has written letters to the Child but that DCS advised him to stop writing letters. He stated that his specific requests to DCS for visitation were denied even though his facility allowed visitation and his permanency plan established a visitation schedule. He agreed that he had not remitted child support since his incarceration. However, he completed parenting classes, attended group therapy, and completed other programs provided by his facility.

Micaela Newport, the Child's DCS case manager, testified that she was assigned to the case in September 2021, after the filing of the termination petition. Ms. Newport provided Father with a copy of the permanency plan.[3] She was unaware of his completion of programs or assessments while incarcerated other than a general risk assessment. She

---

[3] Father's compliance with the permanency plan was not included as a ground for termination.

confirmed that visitation was listed in his permanency plan but explained that DCS generally disallowed visitation when the parent is incarcerated. She claimed that Father had not contacted her concerning visitation and that he also had not provided her with any letters for the Child.

Ms. Newport stated that the Child has resided with the same foster family since the time of removal. She stated that she speaks with the Child on a monthly basis. She described the Child as healthy, happy, and bonded with her foster family. She asserted that the Child does not ask about Father but that she has expressed some disappointment in his incarceration. She confirmed that Ivy resided with the Child, as well as six other children. She claimed that the Child considered the other children in the home as her own siblings.

Foster Mother confirmed that the Child enjoyed a healthy relationship with her and the rest of her foster family, including Ivy. She stated that the Child was "very angry and emotional" when she first entered the home. She claimed that the Child is now doing well in school, participates in a number of honors programs at school, and loves to work in the garden. She provided that the Child also participates in therapy on a monthly basis. She asserted that she and her husband intend to adopt the Child, along with Ivy, should they become available for adoption.

Father testified in rebuttal that DCS advised the court that they could not assist Father with his completion of the permanency plan due to his incarceration. He further claimed that Ms. Newport advised him that the Child was worried that the adoption would upset him, evidencing their continued bond. Father agreed that his relationship with the Child has suffered as a result of his incarceration but claimed that DCS's refusal to work with him lessened his ability to maintain such a relationship.

Following the hearing, the court issued a final order in which it found that the evidence presented established the statutory grounds alleged. The court also found that termination of Father's rights was in the best interest of the Child. This appeal followed.

## II.    ISSUES

We consolidate and restate the issues pertinent to this appeal as follows:

A.    Whether clear and convincing evidence supports the trial court's finding of statutory grounds for termination.

B.    Whether clear and convincing evidence supports the trial court's finding that termination was in the best interest of the Child.

## III. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

Although parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See In Re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and (2) [t]hat termination of the parent's or guardian's rights is in the best interest[ ] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). "Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Audrey S.*, 182 S.W.3d at 861 (citations omitted). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (citations omitted); *see also In re Gabriella D.*, 531 S.W.3d 662, 680 (Tenn. 2017).

Lastly, in the event that the "resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)). "Thus, this court gives great weight to the credibility accorded to a particular witness by the trial court." *In re Christopher J.*, No. W2016-02149-COA-R3-PT, 2017 WL 5992359 at *3 (Tenn. Ct. App. Dec. 4, 2017) (citing *Whitaker*, 957 S.W.2d at 837).

## IV.    DISCUSSION

### A.

As indicated above, the court granted the termination petition based upon the following statutory grounds: (1) abandonment based upon wanton disregard; (2) incarceration of ten years or more; and (3) the persistence of conditions which led to removal. We will consider each ground as required by our Supreme Court. *In re Carrington H.*, 483 S.W.3d at 525–26 ("[T]he Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests.").

### 1. Abandonment by Wanton Disregard

Parental rights may be terminated for abandonment, as defined in Tennessee Code Annotated section 36-1-102. Tenn. Code Ann. § 36-1-113(g)(1). As relevant here, abandonment can be found when a parent who is incarcerated when the termination petition is filed "has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child." Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2019). The relevant pre-incarceration period for conduct exhibiting wanton disregard referred to in section 36-1-102(1)(A)(iv) "is not limited to acts during the four-month period immediately preceding the incarceration." *In re Jeremiah T.*, No. E2008-02099-COA-R3-PT, 2009 WL 1162860, at *8 (Tenn. Ct. App. Apr. 30, 2009) (citing *In re Audrey S.*, 182 S.W.3d at 871).

"Wanton disregard" is not a defined term, but this court has "repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.*, 182 S.W.3d at 867–68 (citations omitted). Tennessee Code Annotated section 36-1-102(1)(A)(iv) represents the General Assembly's "commonsense notion that parental incarceration is a strong indicator that there may be problems in the home that threaten the welfare of the child" and that "[i]ncarceration severely compromises a parent's ability to perform his or her parental duties." *In re Audrey S.*, 182 S.W.3d at 866. "The actions that our courts have commonly found to constitute wanton disregard reflect a 'me first' attitude involving the intentional performance of illegal or unreasonable acts and indifference to the consequences of the actions for the child." *In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015).

At the time of the Child's birth, in January 2011, Father was on probation for an offense committed in April 2010. Months after the Child's birth, on April 4, 2011, Father sold oxycodone to an undercover operative within 1,000 feet of a public park. He later pled guilty to delivery of a Schedule II drug and received a sentence of ten years to be served with the Tennessee Department of Correction. Father was again placed on probation for this second offense.

Approximately two years later, on March 9, 2013, Father was stopped for a traffic offense, during which it was discovered that he was driving on a revoked license and was in possession of drug paraphernalia. A few days later, on May 16, he was found in possession of items used in the process to manufacture methamphetamine. On November 3 and November 5, the Blount County Circuit Court revoked Father's probation of his 2010 and 2011 offenses. On November 8, he pled guilty to promotion of methamphetamine manufacture, possession of drug paraphernalia, and driving on a revoked license, wherein he received sentences of 6 years, 11 months and 29 days, and 180 days, respectively. The 6-year sentence was ordered to be served consecutively to the 10-year sentence, for a total effective sentence of 16 years. Apparently, Father was on some type of release when he

was arrested once more on January 4, 2018. The details are unclear from the record as to why Father was arrested or as to why he was not incarcerated at that time; however, he has remained incarcerated since that time.

Father first argues that the details of his 2010 offense should not be considered because there was no proof that he was aware of the Child's existence at that time. Defendant objected at trial to the admission of evidence concerning criminal offenses committed prior to the Child's birth but did not object to the admission of evidence establishing the violation of the probationary sentence imposed for the offense committed in 2010. Defendant specifically stipulated to the admissibility of documents including evidence of this violation but now argues that such evidence is inadmissible. We agree that the details of the 2010 offense are irrelevant and were held inadmissible by the trial court. However, we hold that the violation of the probationary sentence imposed was admitted without objection and is now waived as an issue on appeal. Further, such evidence is relevant and proof of Father's wanton disregard for the Child's welfare, namely that he committed an offense shortly after the Child's birth while he was already on probation for a prior offense. Father's commission of a felony shortly after the Child's birth and his flurry of criminal activity in May 2013 that resulted in violations of his probation are more than enough evidence to sustain the trial court's finding of abandonment by wanton disregard for the Child's welfare.

Accordingly, we find no error in the trial court's determination that there was clear and convincing evidence supporting the termination of Father's parental rights for abandonment by wanton disregard. We affirm the trial court's judgment terminating Father's parental rights on this ground.

### 2. Incarceration

Father asserts that the trial court erred in terminating his parental rights based upon his incarceration when he completed his ten-year sentence prior to the Child's removal. DCS responds that the record supports the trial court's finding by clear and convincing evidence that he was confined under a sentence of 10 or more years when he received a total effective sentence of 16 or more years, which had not yet been completed.

This question involves the interpretation of a statute. Statutory construction is a question of law that is reviewed de novo without any presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). This court's primary objective is to carry out legislative intent without broadening or restricting the Act beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the legislature is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is

clear, we should apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

The statute at issue provides as follows:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

\* \* \*

(6) The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court[.]

Tenn. Code Ann. § 36-1-113(g)(6).

Father does not challenge that he was confined under a sentence of ten or more years or that the Child was under eight years of age at the time of his sentencing. Citing an opinion from this court issued in 2006, he claims that this ground may not apply to him because he completed his ten-year sentence prior to the Child's removal by DCS and well before the termination hearing. *In re E.M.P.*, No. E2006-00446-COA-R3-PT, 2006 WL 2191250, at *6 (Tenn. Ct. App. Aug. 3, 2006) (upholding termination on this ground when the mother was serving a sentence of ten or more years at the time of the termination hearing). He explained that he received credit for time on probation and time served in confinement and that he was serving the remainder of his six-year sentence at the time of removal and during the termination hearing. Citing an opinion from this court issued in 2009, DCS responds that application of this statutory ground does not depend on when the sentence is served or whether the parent is currently incarcerated at the time of the hearing. *In re D.M.*, No. M2009-00340-COA-R3-PT, 2009 WL 2461199, at *3 (Tenn. Ct. App. Aug. 12, 2009) (upholding termination when the father had completed his sentence of ten or more years prior to the hearing). Rather, the proper inquiry is whether the parent was sentenced to a term of ten or more years in confinement when the child at issue was younger than eight years old.

While we commend defense counsel for his zealous representation of Father, the issue before the court in 2006 was not Mother's confinement status at the time of the hearing. The question presented was whether her consecutive sentences of eight and three years could be combined for purposes of determining whether she was confined under a sentence of ten or more years pursuant to Section 36-1-113(g)(6). *In re E.M.P.*, 2006 WL

2191250, at *6. The court found that she was confined under a sentence of ten or more years. *Id.* The same holds true in this matter when Father was confined under a total effective sentence of 16 or more years. Accordingly, we find no error in the trial court's determination that there was clear and convincing evidence supporting the termination of Father's parental rights based upon his incarceration under a period of confinement for ten or more years. We affirm the trial court's judgment terminating Father's parental rights on this ground.

### 3. Persistence of Conditions

Father argues that clear and convincing evidence was not presented to establish the statutory ground of the persistence of conditions which led to removal because the Child was not removed from his home as evidenced by his incarceration at the time of removal. DCS does not defend this ground of termination. Under Tennessee law, a trial court may terminate parental rights when:

> (3)(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months *by a court order* entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, *and*:
>
> (i)      The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;
>
> (ii)      There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and
>
> (iii)      The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home;

Tenn. Code Ann. § 36-1-113(g)(3) (emphasis added). Termination of parental rights requires clear and convincing evidence of all three factors. *In re Valentine*, 79 S.W.3d at 550. Additionally, the persistence of conditions ground may only be applied "where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." *In re Audrey S.*, 182 S.W.3d at 874.

The record before this court establishes that Father did not have custody of the Child

but was incarcerated at the time of the Child's removal from Mother's care. The "threshold consideration" for this ground is a court order of removal from the home or custody of the parent. *See generally In re Allie-Mae K.*, No. M2020-00215-COA-R3-CV, 2020 WL 6887870, at *11-12 (Tenn. Ct. App. Nov. 24, 2020) (reversing the termination ground of the persistence of conditions based upon the failure to admit the removal order into the record). Accordingly, we reverse this ground of termination as applied to Father. This conclusion does not end our inquiry because only one ground of termination is necessary to support a termination decision. Tenn. Code Ann. § 36-1-113(g).

B.

Having concluded that there was clear and convincing evidence supporting at least one statutory ground of termination, we must consider whether termination was in the best interest of the Child. Effective April 22, 2021, the General Assembly amended Tennessee Code Annotated § 36-1-113(i) by deleting the previous subsection in its entirety and substituting a new subsection providing, inter alia, 20 factors to be considered in determining whether termination is in the child's best interest. *See* 2021 Tenn. Pub. Acts, Ch. 190 § 1 (S.B. 205). The amended statute does not apply to this action, filed one day before April 22, 2021. *In re Riley S.*, No. M2020-01602-COA-R3-PT, 2022 WL 128482, at *14 n.10 (Tenn. Ct. App. Jan. 14, 2022) *perm. app. denied* (Tenn. Mar. 17, 2022).

The following non-exhaustive list of factors are applicable to this action:

> (i)   In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:
>
>> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>>
>> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;[4]
>>
>> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

---

[4] *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015) ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

- 10 -

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

Father has failed to ready himself for the Child's return and was incarcerated at the time of the hearing. Tenn. Code Ann. § 36-1-113(i)(1). Meanwhile, the Child is now in a foster home with parents who wish to adopt her as their own, along with her beloved sister. A change of caretakers at this point would be emotionally detrimental to her. Tenn. Code Ann. § 36-1-113(i)(5). Questions remain as to Father's ability to provide a safe and stable

home for the Child once released given his repeated probation violations and commission of drug offenses. Tenn. Code Ann. § 36-1-113(i)(7). We commend Father for his efforts toward improvement while incarcerated and his plans for reentry into society upon release. However, the Child should be permitted to achieve permanency in the only home she has known since her removal rather than being subjected to an additional lengthy period of uncertainty while waiting for Father to establish himself outside of confinement. With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Father's parental rights was in the best interest of the Child. We affirm the trial court.

## V.      CONCLUSION

The judgment of the trial court is affirmed, in part, and reversed, as to the trial court's finding of termination based upon the persistence of conditions which led to removal. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Timothy C.

_____
JOHN W. McCLARTY, JUDGE